NATIONAL MACHINERY CO. *v.* UNITED STATES [1]

United States Customs Court, Third Division

(Decided July 13, 1938)

Plaintiff not represented by counsel.
*Charles D. Lawrence*, Acting Assistant Attorney General, for the defendant.

Before CLINE, EVANS, and KEEFE, Judges; EVANS, J., not participating

KEEFE, Judge: This action involves the assessment of duties upon an importation of certain rum as part of the baggage of a resident subsequent to the return to the United States. The record discloses that the resident returned to the United States from Cuba on February 16, 1936. Contained in his baggage, among other things, was a case comprising 2⅗ gallons of Cheves Regal, and the baggage declaration noted that one case containing 2⅗ gallons of Havana Club Rum was a part of his baggage. However, the case of rum was not included in the baggage, but entered the United States at Miami, Fla., on June 19, 1936. From there it was transported under immediate transportation bond entry to Toledo, Ohio, at which port it did not arrive until July 15, 1936. Exemption from duty and internal-revenue tax was disallowed by the collector at the port of Toledo, under the provisions of paragraph 1798, act of 1930, as amended by section 337 of the Liquor Tax Administration Act of June 26, 1936, limiting the exemption from duty allowed travelers to one wine gallon.

The importer contends that the merchandise arrived in the United States prior to the amendment of the act and therefore it is entitled to exemption. That is to say, the rum was imported when it arrived at Miami rather than upon arrival under I. T. bond at Toledo.

The question at issue, therefore, is the precise time when merchandise transhipped under immediate transportation entries is imported and becomes subject to the tariff law. If the rum was imported when unladen at Miami, the importer is entitled to free entry because the amendment to the act of 1930 was not effective. If mer-

---

[1] C. D. 12.

chandise is not imported until released from customs custody, the collector properly assessed duty thereon.

The question is adequately answered by the ruling of the court in the case of *United States* v. *Cronkhite Co.*, 9 Ct. Cust. Appls. 129, T. D. 37980, involving merchandise imported under the provisions of the Tariff Act of 1913, but entered under an immediate transportation entry for transhipment and not received nor released from customs custody until after the Revenue Act of 1916 had amended the provisions of the act of 1913 which provided for an assessment of duty. The court in that case stated that the doctrine uniformly adhered to by the courts is that:

\* \* \* so long as goods remained in the custody and control of the officers of the customs they are to be regarded as in customs custody so as to be affected by any new legislation in relation to the duties that Congress may see fit to adopt. What constituted such withdrawal from the custody of the customs and introduction into the body of commerce was held to require payment of duties and the due delivery and receipt by an importer of an unconditional permit of delivery. \* \* \*

The Supreme Court in the Case of *Hartranft* v. *Oliver*, 125 U. S. 525 established the doctrine that goods are not imported within the purview of that term as established in the enacting clauses of tariff acts until they have by due pursuit of the customs requirement passed out of the custody of the Government into the custody of the importer.

The merchandise herein, not having been released to the importer from customs custody until after the amendment of June 26, 1936, became effective, the duty taken by the collector is held to have been legally assessed.

Judgment will therefore be entered in favor of the defendant.