(C. D. 212)

WAGNER BROS. FEED CORP. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided September 13, 1939)

*Strauss & Hedges* (*Howard C. Carter* of counsel) for the plaintiff.
*Webster J. Oliver*, Assistant Attorney General (*Joseph F. Donohue*, special attorney), for the defendant.

Before CLINE, EVANS, and KEEFE, Judges

EVANS, Judge: This is an action against the United States in which the plaintiff seeks to recover money claimed to have been illegally assessed as customs duties upon a shipment of No. 1 Northern Manitoba wheat. At the hearing at the port of New York it was admitted by Government counsel that the merchandise was an I. T. entry shipped to New York, entered at that port, and that when it arrived there it was unfit for human consumption. Both sides agreed that all the papers in the file may be considered in evidence insofar as they relate to facts. No other evidence was offered. From the papers incorporated it appears that this wheat was shipped from Canada, was originally entered at Buffalo under T & E entry (that is Transportation and Exportation entry) and was apparently in good condition upon arrival in the United States. While in transit under bond the

barge containing the wheat was sunk at Herkimer, New York. The barge and its contents were salvaged and a consumption entry was made at the port of New York in which the wheat was claimed to be unfit for human consumption and 31 per centum damaged. The collector of customs assessed duty at the rate of 42 cents per bushel under the provisions of paragraph 729, of the Tariff Act of 1930. That paragraph is in the following language:

PAR. 729. Wheat, 42 cents per bushel of sixty pounds; wheat, unfit for human consumption, 10 per centum ad valorem; wheat flour, semolina, crushed or cracked wheat, and similar wheat products not specially provided for, $1.04 per one hundred pounds.

Plaintiff herein claims that such assessment was contrary to law and that as the wheat was damaged and was entered as unfit for human consumption it was entitled to be assessed at 10 per centum ad valorem under said paragraph 729. A further claim is made that as the appraiser returned the merchandise as entered the collector had no authority to liquidate the entry other than at the 10 per centum rate. A mere statement of this claim is sufficient to show that it has no warrant in law for the reason that the collector is the classifying officer and the opinion of the appraiser as to classification of merchandise is merely advisory.

The plaintiff herein bases his claim upon the contention that the dutiable status of this wheat was determined by its condition when it arrived at the port of New York and not by the condition of said wheat when it was entered at the port of Buffalo for transportation and exportation. He argues that under the decisions of this court and the Court of Customs and Patent Appeals holding that merchandise is not imported until after it has passed beyond the custody and control of the customs officials and into the custody and control of the importer, thereby becoming a part of the body commerce of this country, this wheat was not imported within the meaning of the tariff act because there had been no payment of duty at that time nor had a permit of delivery been given to the importer.

A recent case decided after the briefs of counsel here presented were filed, is found in *East Asiatic Co.* v. *United States*, C. D. 180, wherein Judge Cline, writing the opinion for this division of the court, held that where bags of copra meal, not legally marked as provided for in section 304, of the Tariff Act of 1930, were brought into this country and entered for transshipment to a foreign country, but subsequently were entered for consumption and withdrawn, they were subject to marking duty. This decision was based upon a finding that "the time of importation" meant the time when the importing vessel came within the jurisdiction of the United States with intent to unlade. It is true that the court there was construing section 304 (b), Tariff Act of 1930, the marking statute, but we think the reasoning of that

decision is applicable here. A number of decisions were there cited which held that "importation" in a tariff sense unless limited by the statute, means merchandise which has been brought within the limits of a port of entry with intent to unlade. The papers in evidence in the case before us disclose that the wheat was loaded on the barge at the Dakota Elevator at the port of Buffalo, N. Y., having arrived at that port by the steamship *Algocen* from Canadian ports. Therefore it would seem that the wheat was brought within the limits of the port of Buffalo with intent to unlade the wheat and transfer the same to the barge for shipment to New York. However that may be, we do not rest our decision on that point.

The Government claims that plaintiff's remedy should have been pursued under section 563, of the Tariff Act of 1930.

Said section 563 is as follows:

SEC. 563. ALLOWANCE FOR LOSS—ABANDONMENT OF WAREHOUSE GOODS.

(a) ALLOWANCE.—In no case shall there be any abatement or allowance made in the duties for any injury, deterioration, loss, or damage sustained by any merchandise while remaining in customs custody, except that the Secretary of the Treasury is authorized, upon production of proof satisfactory to him of the loss or theft of any merchandise while in the appraiser's stores, or of the actual injury or destruction, in whole or in part, of any merchandise by accidental fire or other casualty, while in bonded warehouse, or in the appraiser's stores, or while in transportation under bond, or while in the custody of the officers of the customs, although not in bond, or while within the limits of any port of entry and before having been landed under the supervision of the officers of the customs, to abate or refund, as the case may be, the duties upon such merchandise, in whole or in part, and to pay any such refund out of any moneys in the Treasury not otherwise appropriated, and to cancel any warehouse bond or bonds, or enter satisfaction thereon in whole or in part, as the case may be, but no abatement or refund shall be made in respect of injury or destruction of any merchandise in bonded warehouse occurring after the expiration of three years (or ten months in the case of grain) from the date of importation. The decision of the Secretary of the Treasury as to the abatement or refund of the duties on any such merchandise shall be final and conclusive upon all persons.

The Secretary of the Treasury is authorized to prescribe such regulations as he may deem necessary to carry out the provisions of this subdivision and he may by such regulations limit the time within which proof of loss, theft, injury, or destruction shall be submitted, and may provide for the abatement or refund of duties, as authorized herein, by collectors of customs in cases in which the amount of the abatement or refund claimed is less than $25 and in which the importer has agreed to abide by the decision of the collector. The decision of the collector in any such case shall be final and conclusive upon all persons.

Any case pending before the United States Customs Court upon the effective date of this act, under the provisions of section 563, of the Tariff Act of 1922, may, with the consent of the parties and the permission of the court, be transferred to the Secretary of the Treasury, or to the collector, for consideration and final determination in accordance with the provisions of this subdivision.

(b) ABANDONMENT.—Under such regulations as the Secretary of the Treasury may prescribe and subject to any conditions imposed thereby the consignee may at any time within three years (or ten months in the case of grain) from the date

of original importation, abandon to the Government any merchandise in bonded warehouse, whereupon any duties on such merchandise may be remitted or refunded as the case may be, but any merchandise so abandoned shall not be less than an entire package and shall be abandoned in the original package without having been repacked while in a bonded warehouse (other than a bonded manipulating warehouse).

In the brief filed, plaintiff's attorney states that it is not claiming an allowance for damage and therefore section 563, *supra*, has no application. While it is true that plaintiff does not claim "allowance for damage" in the wording of its contention, nevertheless in substance that is the claim. Had this wheat been entered as "wheat" it would have been subject to duty at 42 cents per bushel under paragraph 729, *supra*. However, due to a casualty while in transportation under bond, the "wheat" was damaged by water and became "unfit for human consumption," thereby falling within another classification in said paragraph, viz., "wheat, unfit for human consumption," which is dutiable at 10 per centum ad valorem. The statute, section 563, *supra*, provides that no allowance shall be made in duties for any deterioration or damage sustained by any merchandise while in transportation under bond except as provided therein. Therefore this court, if it granted the claim of the plaintiff herein, would be circumventing the statute. Although plaintiff claims that section 563 has no application in the instant case, nevertheless the papers which were moved in evidence show that claim for allowance under that section was made but this claim was not allowed because the wheat was not produced for examination in order that the rate of damage might be determined, because it had been disposed of prior to the filing of the application.

On this point we think the case of *Bush & Co.* v. *United States*, 12 Ct. Cust. Appls. 22, T. D. 39894, is in point. There a shipment of cleaned rice was damaged by fire while being unloaded from the importing vessel. The Department of Agriculture requested the collector of customs at the port of entry to refuse delivery of the rice as damaged and unfit for human consumption. However, on learning that a portion was fit for human consumption, delivery was allowed on the condition that the rice be reconditioned, that the Department be permitted to see the rice after it had been reconditioned, and that the damaged portion be either destroyed or sold for animal feed. A portion of the shipment after reconditioning was sold for human consumption and the balance used as hog feed. The collector classified the entire shipment as "rice, cleaned." The importer claimed that all the rice should be allowed free entry as a crude vegetable substance, or, in the alternative that the portion unfit for human consumption which was sold as animal feed be entitled to free entry as a crude vegetable substance. The court held that at the time of shipment all the

merchandise was "rice, cleaned," and that if the importer had established what portion of the shipment had become worthless, he would have been entitled to an *allowance* for such portion. It further held that the importer was not entitled to a reclassification of his merchandise at a lower rate because of the casualty, for the imported commodity was still cleaned rice, although damaged. It is true that the statute there involved contained no provision "rice, unfit for human consumption." However, we think the reasoning of that decision is applicable here. The rice, although damaged, remained rice which had been cleaned, the commodity which had been shipped. Here the wheat is still No. 1 Northern Manitoba wheat which has been damaged and rendered thereby unfit for human consumption. As stated above, Congress has provided for allowance in duty on merchandise which has been damaged under the circumstances shown to have existed here and has outlined the procedure under which such allowance may be made. The plaintiff herein attempted to follow that procedure, but failed in its proof, as shown by the papers in evidence. We find upon the record that the claim of the plaintiff is without warrant in law for the reason that it cannot by indirection obtain allowance for damage which the statute expressly prohibits except by compliance with the conditions set forth therein.

Plaintiff's claim is therefore overruled. Judgment for defendant. It is so ordered.