(C. D. 569)

Marco Importing Co. *v.* United States

United States Customs Court, Third Division

(Decided December 11, 1941)

*G. W. R. Wallace; Barnes, Richardson & Colburn (Joseph Schwartz* of counsel) for the plaintiff.

*Paul P. Rao,* Assistant Attorney General (*Richard H. Welsh* and *Joseph F. Donohue,* special attorneys), for the defendant.

Before Cline and Keefe, Judges

Keefe, Judge: This is an action for the recovery of duties assessed upon certain cognac in bottles found broken upon their arrival in Chicago, the port of destination, after having been shipped from New York upon an immediate transportation entry. The collector allowed for breakage reported as having occurred upon arrival of the importing vessel at the port of New York but failed to allow for breakage happening while in transit from New York to Chicago. The plaintiff claims that an additional allowance should have been made by reason of such breakage in transit between New York and Chicago.

At the trial the deputy collector of customs in charge of the liquidating division at Chicago testified for the plaintiff concerning the condition of the merchandise and the reasons for his action relative thereto in language following:

The merchandise covered by Entry 4211 consisted of 25 cases of cognac, a part of 750 cases which arrived at the port of New York on May 10, 1939, Ex-Steamer Isle de France, and were shipped to Chicago under New York I. T. 33214 dated May 15, 1939. The total breakage under this entry was 15 bottles of which 12 bottles were noted on the manifest, and 3 found in excess of manifest upon examination of the shipment at Chicago. Of the 12 bottles manifestly broken, 11 of them were more than 10 per cent of case quantity and allowance was made in liquidation for the duty and Internal Revenue Tax thereon. One bottle manifestly broken was under 10 per cent of case quantity and no allowance for duty was made; only an allowance for the Internal Revenue tax. Of the 3 bottles found broken at the port of Chicago not covered by manifest exceptions, one

bottle out of case 33 was under 10 per cent of case quantity and therefore no duty was allowed; Internal Revenue Tax only was allowed. Two bottles were found broken in case 7 over 10 per cent of case quantity, but allowance was only made for the Internal Revenue Tax, no allowance being made for the duty. * * * Allowance was not made for the duty on the two bottles out of case 7 although they were over 10 per cent of case quantity following the directions of the Bureau of Customs in its interpretation of paragraph 813 of the tariff act.

The witness further testified that prior to the issuance of such instructions contained in Bureau of Customs letter dated January 20, 1939, it had been the practice of his office in like circumstances to grant an allowance for duty as well as for the internal-revenue tax upon breakage reported by the gauger at the port of Chicago.

The witness further testified that merchandise destined for an inland port is first entered at the port of arrival for the purpose of having the record of the merchandise upon the vessel checked at the time of entry and in order to protect its transmittal to the port of destination under Government supervision; that after such entry is made the merchandise is shipped in bond from the port of arrival to the port of destination where it is regularly entered for consumption; that merchandise shipped under an immediate transportation entry would not ordinarily be gauged until it reached the port of destination and in the present case the gauger's report was filed at Chicago; that the affidavit of importer verifying breakage in immediate transportation shipments is filed at the port of entry, which, in this case is Chicago; that an immediate transportation entry is liquidated at such port of destination; and that the affidavit relative to the breakage herein was properly and timely filed at the port of Chicago by the importer.

The plaintiff limits his claim for refund of duties to the two bottles which were found broken in case 7 while in transit from New York to Chicago and it is contended that such bottles were broken "in transit from a foreign port" and that a shipment in bond under an immediate transportation entry is not for customs purposes deemed to be "imported" until it arrives at the port of destination. In support of the contentions made, the plaintiff cites the *Five Per Cent Cases* (*Pulaski* v. *United States*), 6 Ct. Cust. Appls. 291, T. D. 35508, wherein it was held that all statutes are to be construed so as to sustain rather than to ignore or defeat their purpose; to give them a field of operation, if the language will permit, rather than to treat them as meaningless; and *National Machinery Co.* v. *United States*, 1 Cust. Ct., 45, C. D. 12, wherein it was held that goods entered for immediate transportation before a change in the law and arriving at the port of destination after the new legislation became effective constituted an importation of such incomplete character that it became subject to the new laws governing the duties to be levied upon such goods.

The Government contends that merchandise shipped under bond from the port of original entry to the port of destination is not to be considered "in transit from a foreign port" because the importation occurs when the vessel arrives at the port of entry intending there to discharge her cargo, citing *Kidd* v. *Flagler*, 54 Fed. 367,369; that an importation.is considered complete when brought within the limits of a port of entry with the intention of unloading them there, citing *Kohne* v. *Insurance Co.*, 1 Wash. C. C. 138, 165; *United States* v. *Ten Thousand Cigars*, 2 Curt. 436, 437; that goods' entered in bond for immediate transportation are constructively in a bonded warehouse, citing *Seeberger* v. *Schweyer*, 153 U. S. 609, and *Marshall Field & Co.* v. *United States*, 56 Treas. Dec. 280, T. D. 43605; and that the importer herein is not entitled to relief, the loss in question not being under the provisions of paragraph 813, because such loss did not occur while the merchandise was "in transit from a foreign port," citing *Park & Tilford Import Corp.* v. *United States*, 26 C. C. P. A. 342, C. A. D. 38.

While the cases relied upon by the plaintiff are not particularly applicable to the question involved here, the Government, in our opinion, could not have cited more inapplicable cases in support of its contention, nor more inaptly applied.them.

The sole question presented involves the intepretation to be accorded paragraph 813 granting specific allowances for breakage of packages containing liquors and the like while "in transit from a foreign port."

The ordinary meaning of the word "import" is *to bring in* and the word "importation" as used in tariff statutes, *unless otherwise limited*, refers to merchandise to which that condition or status has attached. See *United States* v. *Estate of Boshell*, 14 Ct. Cust. Appls. 273, T. D. 41884; *Diana* v. *United States*, 12 Ct. Cust. Appls. 290, T. D. 40295; *Franklin Sugar Refining Co.* v. *United States*, 178 Fed. 743. However, it is also well settled that the meanings to be given to the terms "importation" and "import" when used by Congress often differ, the variation depending upon the context of the provision in which the terms are used or implied and the object to be attained by their use. See *Cunard Steamship Co., Ltd., et al.* v. *Mellon, Secretary of the Treasury et al. (etc.)*, 262 U. S. 100; *Procter & Gamble Manufacturing Co.* v. *United States*, 19 C. C. P. A. 415, T. D. 45578; and *East Asiatic Co., Inc.* v. *United States*, 27 C. C. P. A. 364, C. A. D. 112.

The situation arising here involves breakage of bottles containing liquors, upon which an allowance is specially provided in paragraph 813 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, reading as follows:

PAR. 813. There shall be no constructive or other allowance for breakage, leakage, or damage on wines, liquors, cordials, or distilled spirits, except that *when it shall appear to the collector of customs from the gauger's return, verified by an affidavit by the importer to be filed within fifteen days after delivery of the merchandise*, that a cask or package has been broken or otherwise injured *in transit from a*

*foreign port* and as a result thereof a part of its contents amounting to 10 per centum or more of the total value of the contents of the said cask or package in its condition as exported, has been lost, allowance therefor may be made in the liquidation of duties. [Italics not quoted.]

In the administrative provisions of the law, section 484 provides that "entry shall be made at the customhouse within forty-eight hours, exclusive of Sundays and holidays, after the entry of the importing vessel or report of the vehicle, or after the arrival at the port of destination in the case of merchandise transported in bond, unless the collector authorizes in writing a longer time."

In the Customs Regulations of 1937, under article 882, subparagraphs (*j*) and (*k*), it is provided as follows:

(*j*) An allowance in duty on merchandise reported short at destination, including merchandise found by the appraising officer to be damaged and worthless, and animals and birds found by the discharging officer to be dead on arrival at destination, will be made in the liquidation of the entry, regardless of the amount of duty involved. * * *

(*k*) Liquidation of entries covering merchandise concerning which there is report of shortage should be made without awaiting instructions from the Bureau, and allowance made for the missing merchandise, except that no allowance should be made for shortages in liquors due to leakage or breakage otherwise than is provided for in articles 814 and 815, or 800 to 803.

Article 814 referred to in subparagraph (*k*) consists of a restatement of paragraph 813. Article 815 construes the word "delivery" appearing in paragraph 813 "to be effected at the time when merchandise is actually delivered by the carrier or on its order either directly to the importer or to the storekeeper in charge of a bonded warehouse." That where gauging is delayed until after the merchandise has been deposited in a bonded warehouse, the "date of delivery" shall be construed to be the date of the completion of the gauging, and that allowances shall be made only for such losses as occurred prior to the gauging of the merchandise. Articles 800 to 803, referred to in article 882 (*k*), *supra*, have reference to losses occurring solely through accidental fire or other casualty, or theft, and the abatement of duty authorized in accordance with the provisions of section 563.

The language used by Congress in enacting the grant of an allowance in duties for breakage, leakage, or damage upon wines, liquors, or distilled spirits while the same is "in transit from a foreign port" clearly indicates that the words "in transit" were to be given their ordinary meaning of goods in "the state of being conveyed." The word "transit" is defined in the Century Dictionary and Cyclopedia as "The act of passing; a passing over or through; a passage; the act of moving, or the state of being conveyed." Thus goods are in transit from the exporting country until conveyed to their destination. In such transit from the foreign country Congress has provided the mode of the determination of breakage and the proof to be supplied upon behalf of the importer: First, the collector shall have before

him the return of the gauger; and second, an affidavit of the importer to be filed after delivery to him of the goods. In making such provision Congress was well aware of the fact that imported goods are gauged at the port at which the goods are destined to be entered and that the importer is unable to gain control over the merchandise until after such entry at the port of destination. If the construction sought by the Government were upheld the purpose of Congress in granting allowance in duties would be defeated insofar as it would pertain to goods entering the United States at any other port of entry than that to which the goods were destined to be delivered. Although the word "import" or "importation" is not used in paragraph 813, Congress has indicated through the language of the provisions therein that it was the intention to regard imported merchandise covered by immediate transportation entries as imported upon the completion of its transit from a foreign country to the port of final entry rather than at the time the transit was partially completed upon its reaching the shores of this country.

In the case of *United States* v. *Harris*, 4 Ct. Cust. Appls. 116, T. D. 33392, certain grapes were received at one port in the United States and immediately transshipped to another and there delivered to the importer in their original packages. The grapes were partly rotten in every shipment and it was claimed that an allowance should have been made in the assessment of duties for the depreciation in value and loss from decay. The claim was made under subsection 22 of section 28 of the Tariff Act of 1909, providing in part as follows:

SEC. 22.  *  *  *

No allowance shall be made in the estimation and liquidation of duties for shortage or nonimportation caused by decay, destruction or injury to fruit or other perishable articles imported into the United States whereby their commercial value has been destroyed, unless under regulations prescribed by the Secretary of the Treasury. Proof to ascertain such destruction or nonimportation shall be lodged with the collector of customs of the port where such merchandise has been landed, or the person acting as such, within ten days after the landing of such merchandise. The provisions hereof shall apply whether or not the merchandise has been entered, and whether or not the duties have been paid or secured to be paid, and whether or not a permit of delivery has been granted to the owner or consignee. Nor shall any allowance be made for damage, but the importers may within ten days after entry abandon to the United States all or any portion of goods, water or merchandise of every description included in any invoice and be relieved from the payment of duties on the portion so abandoned: *Provided,* That the portion so abandoned shall amount to ten per centum or more of the total value or quantity of the invoice. The right of abandonment herein provided for may be exercised whether the goods, wares or merchandise have been damaged or not, or whether or not the same have any commercial value: *Provided, further,*  *  *  * Where imported fruit or perishable goods have been condemned at the port of original entry within ten days after landing, by health officers or other legally constituted authorities, the importers or their agents shall, within twenty-four hours after such condemnation, lodge with the collector, or the person acting as collector, of said port, notice thereof in

writing, together with an invoice description and the quantity of the articles condemned, their location, and the name of the vessel in which imported. * * * or if the importer or his agent fails to notify the collector of such condemnation proceedings as herein provided, proof of such shortage or nonimportation shall not be deemed established and no allowance shall be made in the liquidation of duties chargeable thereon.

The Secretary of the Treasury issued regulations providing that whenever the importer intends to make claim of allowance "on account of shortage or nonimportation caused by decay, destruction, or injury to imported fruit," he shall within 48 hours after the arrival of the *importing vessel* give a prescribed notice that he so intends. A detail of examiners are duly provided who shall set aside 5 per centum of each lot, reporting thereupon to the appraiser, who shall make his return within 10 days "after the landing of the merchandise."

The sole question was whether or not section 22, *supra*, related to the "landing" of the goods at the port of Boston or to the "landing" at the port of New York, the port of original entry before transshipment to Boston. If the former, the proofs were filed in time; if the latter, they were not so filed.

The court noted the provisions relative to transshipment upon immediate transportation entries and the provisions therein that goods so transported shall be constantly in the custody of the customs and under active supervision of the customs officials; that the goods must be shipped immediately after being transferred directly from the importing vessel to the carrier, no appraisement being provided for at the port of arrival which required an inspection of the goods, and the only examination made at such port being for the purpose of checking the number of packages and noting any shortages in that particular.

The court was of the opinion that the importer would have been unable to comply with the provisions of the act relative to the proof because the determination of the amount of injury was not made by the customs officials until the goods were "landed" at the port of final destination. Inasmuch as the act relative to immediate transhipment enjoins zealous care and strict noninterference and expeditious delivery of the merchandise in transit, and the act granting an allowance for loss requires an opening of the packages, inspection of the merchandise, a delay in transit, and an interference by the importer or his agents with the expeditious transportation of the merchandise, the court held that the "landing" referred to in subsection 22, *supra*, was the landing at the port of destination, and were any other view taken, it "would result in a discrimination of one port against another in the enforcement of the tariff laws."

The question before us here is comparable to that arising in the *Harris* case, *supra*. Upon the authority of that case we hold that the allowance provided for in paragraph 813 is applicable to merchandise in transit from a foreign port in its condition when landed at the

port of destination rather than at the port of original entry of the importing vessel, and upon such landing the merchandise is to be regarded as "imported."

For the reasons stated, judgment will be entered in favor of the plaintiff, directing the collector to reliquidate the entry and make allowance in duties for the breakage of the two bottles in case 7. In all other respects the protest is overruled.