(C. D. 789)

CHARLES T. SMITH, INC. *v*. UNITED STATES

United States Customs Court, Third Division

(Decided July 2, 1943)

*Puckhafer, Rode & Rode* (*Howard C. Carter* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Richard H. Welsh*, special attorney), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

CLINE, Judge: This is a suit against the United States in which the plaintiff seeks to recover a part of the duty assessed on 305 bushels of wheat, the product of Canada. The commodity was classified under the provision for "wheat" and returned for duty at 42 cents per bushel of 60 pounds under paragraph 729 of the Tariff Act of 1930 and the plaintiff claims that it is dutiable at only 10 per centum ad valorem under the provision for "wheat, unfit for human consumption" in the same paragraph, or at 5 per centum ad valorem under the same provision in the trade agreement with Canada, T. D. 49752. The protest was amended by adding the claim that no duty should have been assessed on that portion of the shipment which the appraiser reported as damaged, on the ground that said merchandise was a nonimportation, but this latter claim was not pressed at the trial.

The record shows that 19,100 bushels of wheat arrived at Buffalo on the S. S. *Bri. Heron Bay* and entry thereof was made under bond for transportation and exportation; that at Buffalo the merchandise was transferred to barges and transported through the canal system to New York to be put in bonded warehouse at that port awaiting exportation; that when the barge *C. H. Hallenbeck* was being unloaded, a portion of the grain became damaged by bilge water which seeped

through the floor boards of the stern of the barge.   Mr. R. S. Liddick, who was in charge of the barge, described, in his affidavit in the record, how the wheat became damaged, as follows:

I told the foreman in charge of unloading to start in the second bow hatch and he insisted on starting in the bow.   I repeatedly told him that I wanted him to start in the second bow hatch which he persistently refused to do.   I then went to the stern of my boat to do some necessary work.   Contrary to my orders he placed the leg in the bow hatch and proceeded to unload the boat.   After completing my work, I noticed the bow of the boat was rapidly rising.   I then asked him to shift the leg to the stern of the boat, so as to lighten the stern.   This he refused to do, saying that I must be crazy and that he did not propose to keep moving the boat back and forth to please me.   After this he placed the leg in the 3rd bow hatch much against my orders.   This caused the bow to raise still higher and caused the water to raise and cover the floor in the stern, resulting in a considerable damage to the cargo.

The record shows further that the person in charge of the grain elevator refused to put the wet wheat in the elevator and it was thereafter entered for consumption; that the importer filed an application for allowance for damage on customs Form 4315 and the appraiser examined the merchandise and found that it was damaged to the extent of 60 per centum; that the customs inspector reported that the damaged wheat was taken out in bags, weighed and sampled, and that 192 bags, containing 18,312 pounds of wheat, were found to have been damaged by water; that the Commissioner of Customs refused to make allowance for the damage under the authority vested in the Secretary of the Treasury by section 563 (a) of the Tariff Act of 1930, the claim being denied on the ground that the damage was not due to a casualty.

Counsel for the plaintiff states in his brief that it is well established that duties are based on the condition of imported goods at the time of importation, citing numerous decisions; that duties do not accrue until the merchandise arrives at the port of entry, citing *United States* v. *Vowell and M'Clean*, 5 Cranch 368; *Arnold et al.* v. *United States*, 9 Cranch 104; that goods are in transit from the exporting country until conveyed to their destination, citing *Marco Importing Co.* v. *United States*, 7 Cust. Ct. 206, C. D. 569; that so long as the merchandise remained under bond for warehousing, its importation had not been completed, citing the *Five Per Cent* cases, *M. H. Pulaski Co. et al.* v. *United States*, 6 Ct. Cust. Appls. 291, T. D. 35508; that merchandise placed in bonded warehouse upon arrival cannot be regarded as imported until duty has been ascertained, delivery permit issued, and the commodity enters into the commerce of the United States, citing *Gump Co.* v. *United States*, 3 Ct. Cust. Appls. 137, T. D. 32384; *Casazza & Bro.* v. *United States*, 13 Ct. Cust. Appls. 627, T. D. 41481; *Stone & Downer* v. *United States*, 19 C. C. P. A. (Customs) 259, T. D. 45388; that for the pur-

pose of making claim for allowance for a nonimportation of goods transshipped in the United States, the shipment shall be considered as "landed" at the port of destination, citing *United States* v. *Harris & Co. et al.*, 4 Ct. Cust. Appls. 116, T. D. 33392; that at no time prior to the damage of the wheat in Brooklyn was there any intention to unlade the merchandise, citing *Minneapolis Cold Storage Co.* v. *United States*, 9 Ct. Cust. Appls. 225, T. D. 38200. Counsel states in his brief that

> Consideration of the foregoing authorities leads to the inevitable conclusion that *at the time of importation* of the wheat in suit it was wheat unfit for human consumption. [Italics quoted.]

Counsel for the defendant cites *Wagner Bros. Feed Corp.* v. *United States*, 3 Cust. Ct. 102, C. D. 212; *Detroit & Canada Tunnel Corp.* v. *United States*, C. D. 717; *United States* v. *Estate of Boshell*, 14 Ct. Cust. Appls. 273, T. D. 41884; *United States* v. *Field & Co.*, 14 Ct. Cust. Appls. 406, T. D. 42052; *Henry Hollander & Co.* v. *United States*, 22 C. C. P. A. (Customs) 645, T. D. 47632; *Cunard S. S. Co.* v. *Mellon*, 262 U. S. 100. The defendant states in its brief:

> Construing the facts herein in the light of the above quoted decisions, it is clear that the involved wheat was imported into the United States when it was brought within the limits of the port of Buffalo, New York, in consequence whereof its dutiable status was properly determined by its condition at that time and not at the time of its entry into New York City.

Counsel for the plaintiff filed a reply brief in which he urges that, while the merchandise crossed the customs border at Buffalo, the importation was not completed at that port because at that time there was no intention to unlade the wheat as it was destined for exportation from New York to some foreign port. Counsel cites *East Asiatic Co., Inc.* v. *United States*, 27 C. C. P. A. (Customs) 364, C. A. D. 112, as an authority bearing on the expression "intent to unlade." That case involved the marking of merchandise entered at Los Angeles for exportation to Denmark, but, on account of a strike among the longshoremen, it was impossible to load the goods upon the exporting vessel, and, after remaining on the dock for about a month, a consumption entry was filed. The trial court found that there was an intent to unload when the goods entered the customs district because they were to be taken off the importing vessel and placed on the dock and that under the authority of the decisions in *United States* v. *Estate of Boshell, supra, United States* v. *Field, supra,* and *Loblaw Groceterias, Inc.* v. *United States*, 22 C. C. P. A. (Customs) 479, T. D. 47481, the goods were imported when they crossed the customs border. The appellate court said:

> We are not in agreement with the finding of the court that when the goods were unloaded on the dock at Los Angeles, under the circumstances at bar, it was the character of unlading referred to in the *Boshell* case, *supra.* The goods were

unloaded for the purpose of being reshipped under a definite regulation of the Secretary of the Treasury authorized by the statute, which regulation obviously applied to goods which were not to be unloaded for the purpose of entering the commerce of the country. * * *.

In spite of the fine distinction drawn by the court with respect to the importer's intent when the goods were taken 'off the importing vessel and put on the dock, the court held that, since the merchandise was finally entered for consumption, it was dutiable at the additional duty of 10 per centum ad valorem because it was not marked when it crossed the customs border. The court said:

* * *. The ship carrying the goods crossed the customs border with the unmarked goods. Surely, under any definition of the term "import" they were completely imported as far as intent was concerned *when the importer changed its mind and decided that they should go into the commerce of this country.* They were not marked at that time and we are of the opinion that a subsequent marking under the circumstances stated would not warrant the collector in failing to levy the 10 per centum duty in question. The intent to cross the customs border, no matter for what purpose, merges into the act of importation when the goods are actually entered for consumption. [Italics mine.]

So, in the instant case, although the importer, in making the transportation and exportation entry at Buffalo, may have had no intention to enter the wheat into the commerce of the United States, its final intent to make such an entry must be considered as having merged with the importation, thus combining the actual entry with the intent to enter.

In *Wagner Bros. Feed Corp.* v. *United States, supra,* cited by the defendant, the facts were very similar to those in the instant case. The importer made a transportation and exportation entry of wheat at the port of Buffalo. The merchandise was loaded on barges at that port to be transshipped to New York under bond, through the canal system. At Herkimer, N. Y., a barge containing a portion of the wheat was sunk but the wheat was salvaged and a consumption entry thereof was made at New York in which the grain was claimed to be unfit for human consumption and was 31 per centum damaged. Nevertheless, the collector assessed duty at 42 cents per bushel of 60 pounds under the provision for wheat in paragraph 729 of the Tariff Act of 1930. The importer claimed that the dutiable status of the merchandise was determined by its condition when it arrived at the port of New York and not by its condition when it was entered for transportation and exportation at the port of Buffalo. The court held that the collector's action in assessing duty at 42 cents per bushel was correct.

The facts in the instant case are stronger for the defendant's contention than those in the case cited because here the wheat was in perfect condition when it entered the district of the port of New York,

the accident having occurred while the barge was being unloaded at Brooklyn.

In *Bush & Co. (Inc.)* v. *United States,* 12 Ct. Cust. Appls. 22, T. D. 39894, cited in the court's decision in *Wagner Bros. Feed Corp.* v. *United States, supra,* the shipment consisted of cleaned rice, but a fire broke out on the vessel while at sea and the rice was damaged by smoke and water so that, at the time of landing, a large portion of it was unfit for human consumption. The collector assessed duty at 1 cent per pound under the provision for "cleaned rice" under paragraph 193 of the Tariff Act of 1913 and it was claimed that the merchandise was free of duty as a crude vegetable substance under paragraph 552 or that the portion which was unfit for human consumption was free. The court upheld the assessment of the collector but stated that, if the evidence had shown the portion of the merchandise which was unfit for any use at the time it crossed the customs border, the importer would have been entitled to relief as to that part.

The decisions in *United States* v. *Vowell and M'Clean, supra, Arnold* v. *United States, supra, M. H. Pulaski Co.* v. *United States, supra, Casazza & Bro.* v. *United States, supra,* and *Stone & Downer* v. *United States, supra,* cited by the plaintiff, cover merchandise which was either entered for consumption or withdrawn from warehouse after the enactment of a new tariff act which the court held was applicable. Those cases present a different question from that involved in the instant case.

The decision in *United States* v. *Harris, supra,* related to a special statute permitting the abandonment of decayed fruit and vegetables within a certain time after entry. The court held that the abandonment should be made at the port of destination when merchandise was transshipped from one port to another in the United States.

The decision in *Marco Importing Co.* v. *United States, supra,* relied upon by the plaintiff in its contention that duty should be assessed on merchandise in its condition when it arrived at the port of destination, also related to a special statute, paragraph 813 of the Tariff Act of 1930, as amended by sec. 32, Customs Administrative Act of 1938, which provided that there shall be no constructive or other allowance for breakage, leakage or damage on wines, liquors, cordials, or distilled spirits, except that when it shall appear to the collector of customs from the gauger's return, verified by an affidavit by the importer to be filed within 15 days after the delivery of the merchandise, that a cask or package has been broken or otherwise injured in "transit from a foreign port" and as a result thereof a part of its contents, amounting to 10 per centum or more of the total value of the contents has been lost. In that case two bottles containing liquor in a case of 12 bottles were broken while the merchandise was in transit between New York and Chicago and the court

held that allowance should be made therefor because the shipment was made from a foreign port to Chicago and, at the time the bottles were broken, it was in "transit from a foreign port." As the decision in that case hinged on language in the statute which is not involved in this case, that decision cannot be held to be an authority for classification of the instant merchandise.

Section 563 (a) of the Tariff Act of 1930 gives jurisdiction of all cases involving damage while under bond or customs supervision to the Secretary of the Treasury and states in no uncertain terms that allowance for damage shall not be made by any other forum. The plaintiff is not claiming under that section, however, but urges that the damage to the wheat, which occurred in Brooklyn, N. Y., before entry for consumption was filed, changed the commodity into a new classification, i. e. "wheat, unfit for human consumption." It is well settled by the decisions herein cited, however, that merchandise shall be classified in its condition at the time it crosses the customs border. The wheat in this case was not unfit for human consumption when it entered either the customs district at Buffalo or that at New York. At that time it was wheat upon which Congress imposed a duty of 42 cents per bushel of 60 pounds under paragraph 729. The protest is overruled. Judgment will be entered in favor of the defendant.