(C.D. 2645)

James G. Wiley, a/c Pasadena Firearms Co. *v.* United States

United States Customs Court, Second Division

(Decided April 4, 1966)

*Glad & Tuttle* (*Edward N. Glad* of counsel) for the plaintiff.
*John W. Douglas,* Assistant Attorney General (*Arthur H. Steinberg,* trial attorney), for the defendant.

Before RAO, FORD, and OLIVER, Judges

OLIVER, Judge: The protest in this case is directed against the action of the collector of customs at the port of Los Angeles, Calif., in his treatment of two separate entries of pistol parts as entireties.

The protest was submitted on the official papers only and they were received in evidence without being marked (R. 3). The facts are not in dispute. Consumption entry 1105 covered the importation of two cases consisting of 600 derringer barrels for 22 caliber rimfire pistols which were shipped from West Germany on July 4, 1957, on board the airplane "Secca" and arrived at Los Angeles on July 6, 1957. Entry was made on July 10, 1957. Consumption entry 1106 also made on July 10, 1957, covered six cases consisting of 600 derringer frames for 22 caliber rimfire pistols which left West Germany on July 4, 1957, on board the airplane "Oykmb." These parts also arrived at Los Angeles on July 6, 1957.

It further appears that the involved barrels and frames were shipped by the same exporter and were consigned to the same importer of record for the account of the same ultimate consignee.

The collector assessed duty on the barrels and frames as entireties or complete pistols at the rate of $1.80 each, plus 35 per centum ad valorem under paragraph 366 of the Tariff Act of 1930, as modified by T.D. 54108. Plaintiff claims the merchandise is separately dutiable as parts of pistols under paragraph 366 of said act, as modified by T.D. 52739 and T.D. 52857, at the rate of 52½ per centum ad valorem.

The relevant portions of the tariff act are listed as follows:

Paragraph 366 of the Tariff Act of 1930, as modified by T.D. 54108:

Pistols and revolvers: Automatic, single-shot, magazine, or revolving, valued over $4 but not over $8 each _____ $1.80 each and 35% ad val

Paragraph 366 of the Tariff Act of 1930, as modified by T.D. 52739 and T.D. 52857:

Parts and fittings for automatic, single-shot, magazine, or revolving pistols and revolvers_____ 52½% ad val.

It is not disputed by plaintiff, and it is to be presumed from the collector's classification, that the imported barrels and frames, by mere attachment, form completed, finished pistols. Rather, it is plaintiff's position that, due to their separate importations and their separate entries, the imported barrels and frames must be subject to separate appraisements and classifications and, therefore, cannot be treated as entireties. Plaintiff argues that the recent case of *Omega Import Co.* v. *United States*, 52 Cust. Ct. 425, Reap. Dec. 10671, is controlling to the issue.

On the other hand, it is the defendant's contention that, while it is well established that parts of an entirety imported on different dates are to be subject to separate duty assessments, the law is different when the parts arrive on the same date and are entered at the same time in consecutive entry numbers. Under these circumstances, the separate shipments and entries merge for classification purposes.

In the alternative, the Government argues that if plaintiff's contention is sustained, the appraisement of the imported articles, which was also predicated on the theory of entireties, is likewise invalid and the liquidation of the entries was, therefore, premature. The matter, in such case, should be remanded to a single judge to determine the proper dutiable values in each entry.

From a review of the decision of the court in the *Omega* case, *supra*, it is clear, as defendant's brief points out, that both a factual and legal distinction operate to prevent the disposition of that case as controlling to the issue before us. That case involved appeals to reappraisement which attacked the action of the appraiser in treating as entireties separate importations of blank starter revolvers with blocked barrels and certain steel rifled barrels containing the same serial numbers as the blank revolvers. The merchandise had been exported to the same plaintiff on different dates and on different vessels from West Germany, but it arrived at the port of entry on the same date and was entered on the same date, although separately. The court entered into a review of several of the leading cases and the principles they express with respect to the effect of the doctrine of entireties, vis-a-vis, separately entered or separately imported merchandise. However, in reaching its decision that the appraiser's action in treating the two importations as entireties was in error, the court relied upon the following two observations: (1) that the imported blank revolvers were themselves completed articles tended to place the factual situation outside of the entireties doctrine; and (2) in reappraisement cases, the date of exportation rather than the date of importation is to be given first consideration and, therefore, since the involved importations were exported on February 24, 1961, and March 1, 1961, respectively, they could not be subject to appraisement as entireties.

While the decision in the *Omega* case, *supra*, is plainly not controlling to the issue presently before us, some of the cases and many of the expressions of law cited therein have universal application to disputes of this nature.

In *Sampson* v. *Peaslee*, 61 U.S. 571, the importer, for its own convenience, had divided a shipment of 4,000 bales of hemp, imported by ship from Manila, onto two separate invoices and two different bills of lading. They were entered separately at the customhouse and were separately appraised without objection by the Government. It turned out that the appraised value of one entry exceeded by 10 per centum the declared value (such discrepancy would not have been present if the 4,000 bales had been entered together) and additional duties were assessed. Plaintiff contended that the entire shipment should have been appraised together. The Supreme Court held that when an entry is made it is conclusive upon the importer as to the contents and, therefore, on the facts before it, each invoice and entry was to be deemed and treated as a separate transaction both for appraisement and for the assessment of duties.

In *United States* v. *Schoverling*, 146 U.S. 76, it was the Government who attempted to apply the entirety doctrine to several importations made on account of the same importer. At issue was the importation of "12 finished gunstocks, with locks and mountings." The collector had assessed them for duty as entireties with certain barrels imported separately by other parties for the account of this importer. Many such importations were still held in bond. There was no dispute that the sole purpose of importing the stocks and barrels was to join them together for sale as shotguns. The court held, citing the *Sampson* v. *Peaslee* case, that the question before the collector and before the court was solely as to the dutiable status of the gunstocks. The intent of the importer to make completed guns for sale was held to be irrelevant on the question of the dutiable character of the gunstocks as a separate importation. In reaching its conclusion, the court referred to the well-established principle of law announced in *Worthington* v. *Robbins*, 139 U.S. 337, that duty must be assessed by examination of the articles in their condition as imported.

It is noteworthy that in the *Sampson* case, *supra*, a single shipment and single importation, because of the action of the importer in separately invoicing and entering, could be deemed and treated as separate transactions for tariff purposes at the option of the defendant while in the *Schoverling* case, *supra*, where the importer chose to make separate entries of what were actually separate importations, the Government was prohibited from treating them as one transaction, or as entireties, for tariff purposes.

Perhaps one of the clearest rationales available on the subject of when or when not to apply the entirety doctrine to imported merchan-

dise was stated by the Second Circuit Court of Appeals in *United States* v. *Irwin et al.*, 78 Fed. 799. There was involved in that case several importations of merchandise entered at various times during the years 1891 and 1892 and consisting of parts of breech-loading shotguns. The evidence elicited before the court below indicated that many such entries were comprised of a similar number of gun barrels and stocks, shipped to the same importer aboard the same steamer, and requiring mere assembly to form completed articles of commerce. The detached parts had been shipped in separate cases and were separately invoiced to enable the importer to make separate entries per each invoice. The court recognized as well-settled doctrine that merchants had the right both to so manufacture and to so import their products as to achieve the lowest duty rates possible. Therefore, the issue in the case was succinctly stated as follows:

\* \* \* We are to consider to what extent this was a legitimate or a successful effort to avoid the payment of the higher duties.

In reversing the lower court and sustaining the collector's classification of the merchandise as complete shotguns by virtue of the entireties rule, the court reasoned, as follows, in distinguishing the Supreme Court's ruling in the *Schoverling* case:

The Schoverling Case does not decide that when the stocks and corresponding barrels are imported together, shipped by the same vessel for the same importer, and entered at the customhouse at the same time, duty is to be assessed upon the fragmentary parts. Under such circumstances, we think the parts are dutiable as a whole. The form of invoice which the importer may adopt, or the mode of packing which he may adopt, are immaterial matters. If he prefers to send the barrels in one case and the stocks in another, he is at liberty to do so, but the fact that they are packed in separate cases cannot affect their dutiable character. Machines and many cumbrous articles are frequently transported with the sections or parts in different packings. If the importers had procured a policy of insurance against loss by fire or the perils of the sea, describing their goods as "shotguns on board the steamship Obdam," the policy would have covered the stocks and barrels in separate cases.

When the barrels and stocks are shipped upon different vessels, it may happen that they can never be assembled together again as a complete gun. The dangers of navigation and other contingencies may intervene to prevent it. It is not for the customs officers, in imposing duties, to speculate upon these contingencies. They must take the articles as they find them to be upon examination. If they cannot, by assembling them together, discover that they are really a different thing, it is their duty to classify them as the article they purport to be.

In the instant case, does the fact that the barrels and frames, invoiced and shipped aboard different aircraft, were imported and entered on the same date allow customs officials to merge the importations and treat the articles as entireties for tariff purposes? We think

not. The risks of safe or on-time arrival, the contingencies expressed in the *Irwin* rationale, *supra*, obtain in air as well as sea transportation. While the speed and scheduling of air-freight transportation afford greater frequency of same-day arrivals than with shipment by vessels, nevertheless, similar contingencies adhere in both modes of transport which create fluctuation and, in turn, speculation. Insurance, no doubt, would normally issue to cover the risks to cargo transshipped by individual ship or plane. The happenstance of safe, same-day arrival should not operate to destroy the desired uniform tariff treatment of imported goods. As was said by the Supreme Court in the *Worthington* case, *supra:*

\* \* \* In order to produce uniformity in the imposition of duties, the dutiable classification of articles imported must be ascertained by an examination of the imported article itself, in the condition in which it is imported.

It is yet another well-established rule in customs jurisprudence that goods are "imported" when they are brought within the customs districts of the United States with the intention to unlade them. *Henry Hollander Co.* v. *United States*, 22 CCPA 645, T.D. 47632. The rule has received application in determining when goods are imported within the meaning of section 1 of the Tariff Act of 1930. *Estate of Lev H. Prichard* v. *United States*, 43 CCPA 85, C.A.D. 612. Thus, it has been repeatedly held that the condition of imported goods for tariff purposes will be determined at the point in time described in the rule. *Sterling Bronze Co.* v. *United States*, 12 Ct. Cust. Appls. 338, T.D. 40487; *Bush & Co. (Inc.)* v. *United States*, 12 Ct. Cust. Appls. 22, T.D. 39894; *Mills & Gibb Corporation* v. *United States*, 13 Ct. Cust. Appls. 72, T.D. 40933; *Charles T. Smith, Inc.* v. *United States*, 11 Cust. Ct. 39, C.D. 789. In the *Sterling Bronze* case, goods which had landed without being properly marked were held to be subject to additional marking duties, although marked before leaving customs custody. In the *Mills* case, the importer filed a protest claiming shortage of goods that were lost after landing at the pier. The protest was overruled on the grounds that duty attached on the condition of the shipment as imported. In the *Smith* case, bushels of wheat arrived at the port of Buffalo and were transshipped through the canal system to New York. On route and before formal entry was made at New York, bilge water ruined part of the shipment. It was held that the evidence established that the merchandise was imported with intent to unlade when it crossed the border at Buffalo and it was, therefore, dutiable in its imported condition.

While airplanes, like vessels, may arrive within the customs districts of the United States on the same date, they do so as individual carriers entering our ports at different points in time. When airplane No. 1 or vessel No. 1 arrives within the jurisdiction with intent to

unlade its cargo, importation is complete and the condition of the merchandise for tariff purposes is established. Although the applicable *amounts* of duty may be determined only after entry, payment, and unconditional delivery (*United States* v. *Mussman & Shafer, Inc.*, 40 CCPA 108, C.A.D. 506), the *condition* of the merchandise attaches upon importation.

* * * If there be an actual bringing in it is importation regardless of the mode in which it is effected. Entry through a customhouse is not of the essence of the act. [*Cunard Steamship Co., Limited*, et *al.* v. *Mellon*, 262 U.S. 100.]

As defendant points out in its brief, the factual situation before us for determination lacks specific judicial precedent. However, applying the principles and cases discussed herein as guidelines to our decision, we hold that the barrels and frames, imported as they were aboard separate aircraft and made the subject of separate entries by the importer, are not dutiable, by virtue of the entireties doctrine, as complete pistols under paragraph 366. Importations by air are as commercially and physically independent events as are importations by sea. In their condition upon importation, entries 1105 and 1106 constituted pistol parts only.

The purpose and intent of the importations notwithstanding, the importer had the right to have his goods manufactured or imported in the manner which would produce the lowest possible duty assessment. Customs examination must focus on the identity of the articles themselves as disclosed in legitimate entries. As the court of appeals indicated, a long time ago in the *Irwin* decision, *supra*, if the condition is or becomes undesirable, the remedy lies with Congress. Till then,

* * * So long as no deception is practiced, so long as the goods are truly invoiced and freely and honestly exposed to the officers of customs for their examination, no fraud is committed, no penalty incurred. [*Merritt* v. *Welsh*, 104 U.S. 694.]

We turn now to the alternative position taken by the defendant in arguing that if the classification of entries 1105 and 1106 as entireties was invalid, then appraisement predicated on the same basis is equally invalid. Certainly the validity of an appraisement may be raised in a protest action. *United States* v. *Gilson Bros.*, 20 CCPA 117, T.D. 45753. There is nothing in this record to indicate that the action of the appraiser was otherwise than in accord with the action of the collector in this respect. Moreover, the classification and liquidation depended upon a total value figure of the constructive attachment of barrel to frame. Under these circumstances, the absence of a validly conducted legal appraisement renders the liquidation of the entries premature nullities. *Supreme Woodworking Machine et al.* v. *United States*, 54 Cust. Ct. 368, Abstract 69204. The protest in this action is

likewise premature and dismissed (28 U.S.C., section 2636(d)), and the case is remanded to a single judge to determine the proper dutiable values in each entry, as provided by law.

Judgment will be rendered accordingly.