(C.D. 3953)

ROSER CUSTOMS SERVICE, A/C CONTINENTAL ORE CORPORATION ET AL. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided January 22, 1970)

*Stein & Shostak* (*Marjorie M. Shostak* of counsel) for the plaintiffs.
*William D. Ruckelshaus,* Assistant Attorney General (*Mollie Strum,* trial attorney), for the defendant.

Before RICHARDSON, LANDIS, and ROSENSTEIN, Judges

LANDIS, Judge: These two protests, consolidated for trial at Brownsville, Texas, on February 28, 1968, were transferred to New

Orleans for further proceedings on completion of testimony taken at Brownsville. The protests come to us for a ruling on defendant's objections to the breadth of a subpoena served on Mr. O. M. McCombs, a customs official of the United States Laboratory at New Orleans, to appear, testify, and produce at New Orleans all records "showing the actual assay" (R. 63) of various carloads of fluorspar, imported by rail from Mexico at Brownsville in January and February 1961.

The testimony which plaintiffs sought to elicit from Mr. McCombs is relevant to the classification of fluorspar under paragraph 207 of the Tariff Act of 1930. Fluorspar containing over 97 percent calcium fluoride is dutiable at the modified rate of $2.10 per ton. Fluorspar containing not over 97 percent calcium fluoride is dutiable at $8.40 per ton.

Protest 62/9155 relates to six carloads out of 23 carloads imported on various dates classified as fluorspar containing not over 97 percent calcium fluoride. Protest 62/3266 relates to two carloads out of 23 additional and different carloads imported on various dates classified as fluorspar containing not over 97 percent calcium fluoride. The remaining entry carloads (38), not in dispute, were classified as fluorspar containing over 97 percent calcium fluoride.

Plaintiffs' avowed purpose for examining Mr. McCombs under subpoena was to establish a composite assay of the 23 carloads, by mathematical computation based on the customs 23 individual assays of each carload in the entry (R. 7, 62, 81). This theory of a composite assay, which we shall discuss *infra*, is plaintiffs' sole basis for these protests.

At New Orleans, on March 27, 1968, defendant objected that the subpoena served on Mr. McCombs was "unreasonable and oppressive" (R. 73) because it tended to cover carloads of fluorspar not identified in the protests and, therefore, outside the scope of the claim in the protests. The trial judge at New Orleans stated that he would "accept the subpoena, subject to the decision of the Division" having jurisdiction of the protests. (R. 89.) We are that Division. Mr. McCombs thereupon testified on direct and cross-examination. His testimony covers 86 pages of transcribed record. (R. 91 through 177.) At the close of the testimony at New Orleans, plaintiffs' request that the protests be transferred back to Brownsville was granted.

On September 25, 1968, the trial judge assigned to preside at the further proceedings in Brownsville on October 1968 (a docket which was subsequently cancelled) wrote counsel for the parties and directed that they each file a memorandum on the objections to the subpoena at New Orleans in order to, as put by the trial judge, "clarify the direction for further proceedings in this litigation." Plaintiffs' memorandum, filed November 25, 1968, is supplemented by a memoran-

dum filed November 27, 1968. Defendant's memorandum was filed January 27, 1969. (Hereinafter these memoranda are called "trial memoranda".)

On March 6, 1969, the date when order was about ready to enter on the several opinions of this Division with respect to defendant's objections, plaintiffs filed an application asking this Division to hear oral argument on the following matters:

> 1. The legal effect of the special procedures authorized by Customs whereby fluorspar imported in separate carloads is permitted to be commingled in a common stockpile on the dock, under General Order (Customs custody), with duty payable, not at the time of importation of the individual carloads, but upon the filing of a single Consumption Entry covering the entire stockpile at the time of its removal from the designated area.

> 2. The scope of the protests at issue herein.

> 3. The request of plaintiffs to be relieved of their concession with respect to the correctness of the Customs assays, where subsequent testimony of the Customs chemist established that no assays were actually made.

Upon defendant's objections, we denied plaintiffs' application and on April 8, 1969 entered an order directing plaintiffs to file a memorandum of law on the matters they had asked to orally argue and for defendant to reply with a memorandum of law. The parties having now filed their memoranda of law on June 10 and July 10, 1969, respectively, we are of the opinion that plaintiffs cannot prevail on their theory of a composite assay of the 23 carloads. When, at any stage of a proceeding, it comes to the attention of the court that the law will not sustain the facts necessary to plaintiffs' theory of the case, it may assume the facts to be as claimed and *sua sponte* order the case submitted for decision. These protests are now, therefore, ordered consolidated and submitted for decision.

For the purpose of our decision, we take the following facts to be undisputed. We repeat that protest 62/9155 relates to six carloads, identified by car number in the protest, out of a total of 23 carloads imported at Brownsville on various dates in multiple cars of railroad trains. As the train crossed the customs border at Brownsville, a fluorspar sample was taken from each of this group of 23 carloads containing fluorspar. The sample, properly identified to denote the car number from which taken, was then sent to the customs laboratory at New Orleans to be assayed or tested for calcium fluoride content incident to proper classification under paragarph 207 of the Tariff Act of 1930, as fluorspar containing over 97 percent calcium fluoride dutiable at the modified rate of $2.10 per ton, or fluorspar containing not over 97 percent dutiable at $8.40 per ton.

After sample was drawn each carload was taken into possession by customs, pursuant to the importer's request under section 490(b) of the Tariff Act of 1930, and held in general order pending customs entry under section 484 of the Tariff Act of 1930. General order, in this instance, consisted of unloading the contents of this group of 23 general order carloads, as each arrived, into a commingled stockpile on the dock at Brownsville. A stockpile, we understand, consisted of 23 carloads segregated on the dock until large enough to fill a barge. On June 15, 1961, 23 general order carloads were incorporated in consumption entry 3019–B; the fluorspar was released, and loaded on a barge for New Orleans.

Protest 62/3266, involving substantially similar facts, relates, as mentioned earlier, to two identified carloads out of a total of 23 additional and different carloads, imported at Brownsville on various dates, sampled, stockpiled in general order, and released under consumption entry 1735–B on January 26, 1961.

The two protests here involved, couched in the form of requests, ask that the various customs assays of the protested carloads (6 and 2 respectively) assessed at $8.40 per ton under paragraph 207 on basis of assays reporting not over 97 percent calcium fluoride, each be reanalyzed to confirm independent analyses, of the same cars, reporting over 97 percent calcium fluoride "which would in turn result in a reliquidation of the entry [23 carloads] with the entire weight therein classified under paragraph 207 at $2.10 per ton." Plaintiffs' legal theory in support of the claim in that the 23 carloads in each entry should have been assayed as one commercial lot of fluorspar and one finding reported on the basis of a composite sample from the 23 carloads, rather than 23 individual assays with findings as to each. (R. 62.) That legal theory, projecting a composite sampling and assay of multiple carloads, imported on *various dates*, is a question of law never before tested in this court. The theory has even broader overtones than the relatively new sampling and assay procedures authorized by customs when fluorspar is imported in multiple car railroad shipments "consisting of two or more cars in a railroad train" from one consignor to one consignee, effective on or about September 11, 1965, 100 Treas. Dec. 353, T.D. 56459.

Defendant's trial memorandum proposes that an order enter limiting these protests to the eight carloads specifically identified in the two protests. Plaintiffs disagree and ask that we open the protests to all 23 carloads in each entry. We find no difficulty in holding that these protests are limited to those carloads specifically identified in the two protests, assayed as containing not over 97 percent calcium fluoride. Simply because Mr. McCombs testified that defendant did not make a

precise assay of the 38 carload samples of fluorspar found to contain over 97 percent calcium fluoride, or have any existing records whatsoever that it could produce on those, does not mean that defendant should now have to defend those assays against plaintiffs' attack. Assays over 97 percent are, as defendant contends, beyond the scope of the protests and, in our opinion, may not now be challenged on any ground. This, however, does not mean that plaintiffs were not entitled to adduce facts consistent with their legal theory of a composite assay.

It would be inconsistent for a plaintiff to accept the method used to establish calcium fluoride content of more than 97 percent and protest the same method when it established less than 97 percent. *T. H. Gonzalez* v. *United States*, 53 Cust. Ct. 149, C.D. 2487 (1964) (concurring opinion). But plaintiffs quite early conceded the accuracy of the individual customs assays (total of 46) in these cases. (R. 10.) Because, as we mentioned above, the assay of the 38 (unprotested carloads) reported as over 97 percent calcium fluoride, was not as precise as plaintiffs would like, plaintiffs ask in their trial memoranda, to be relieved of the concession.

We find it unnecessary to rule on plaintiffs' request to be relieved of the concession and assume, for the purposes of this decision, that on trial plaintiffs would prove that a composite sample of the respective 23 entry carloads would assay out as containing over 97 percent calcium fluoride. Plaintiffs' difficulty is that the composite assay theory runs afoul of the law requiring that imported merchandise be classified and assessed with duty in the condition imported. *The Newman Co. et al.* v. *United States*, 62 Cust. Ct. 634, C.D. 3838, 300 F. Supp. 460 (1969) ; *Broadway Hale Stores, Inc.* v. *United States*, 62 Cust. Ct. 507, C.D. 3816 (1969).

The substance of plaintiffs composite assay theory is that the fluorspar in these protested entries, imported on various dates and covering, as they did, multiple fluorspar shipments sent to general order pending entry, should be treated as one commercial lot for purposes of tariff classification. The theory, on its face, runs contrary to the general rule that merchandise in customs custody must be classified in the condition it is when imported, that is, when first brought within the jurisdictional limits of the United States with the intent to unlade. *Henry Hollander Co.* v. *United States*, 22 CCPA 645, T.D. 47632 (1935) ; *Minneapolis Cold Storage Co.* v. *United States*, 9 Ct. Cust. Appls. 225, T.D. 38200 (1919). The rate of duty which customs must assess under a particular tariff classification (a question which arises when, in the course of importing merchandise, the rate of duty under a particular classification is changed by law) is generally the rate in force at the time the importation is completed. An importa-

tion is not completed until the merchandise is entered for consumption, duties paid, and a delivery permit issued delivering the merchandise from customs custody. *United States* v. *Mussman & Shafer, Inc.,* 40 CCPA 108, C.A.D. 506 (1953); *United States* v. *Sandoz Chemical Works,* 14 Ct. Cust. Appls. 21, T.D. 41542 (1926). The general rules referred to, the one governing classification, the other the rate of duty chargeable under a particular classification, are mutually exclusive judicially contrived rules of law for classifying and collecting duty on imported merchandise. *Minneapolis Cold Storage Co.* v. *United States, supra.* We emphasize the mutual exclusivity of the rules because plaintiffs argue that treating the various importations as one commercial lot does not impair the legal principle that merchandise must be classified in its condition as imported, since the composite assay of the multiple importations would be representative of the condition of the fluorspar at the time the fluorspar entered the commerce of the United States.

While plaintiffs' argument may smack of some logic, it has no support in the law. Merchandise must be classified in the condition it is imported, not in the condition it is entered for consumption. *Charles T. Smith, Inc.* v. *United States,* 11 Cust. Ct. 39, C.D. 789 (1943). We have considered *The Five Per Cent Cases,* 6 Ct. Cust. Appls. 291, T.D. 35508 (1915), and *Hartranft* v. *Oliver,* 125 U.S. 525 (1888), cited by plaintiffs, and find that they merely uphold the general rule as to the rate of duty in force under a particular classification. They do not support plaintiffs' proposition that classifying this fluorspar in the condition it was entered for consumption would not impair the rule that merchandise must be classified in the condition imported.

The composite assay, projected by plaintiffs for classifying the 23 shipments of fluorspar imported on various dates in each of these protest entries, being contrary to the law requiring the fluorspar to be classified in the condition it was when imported, these protests are overruled. Judgment will be entered accordingly.