## UNITED STATES *v.* CORDERO (No. 95).[1]

ENTRY SOUGHT BEFORE COMPLETION OF VOYAGE.

Entry implies the presence of the merchandise at the time entry is sought to be made and where a consignment of gin on board a mail steamer reached Key West August 3, 1909, and entries of the gin were presented by the importer on August 4, the commodity itself remaining on board ship while the vessel proceeded to another destination, but, returning, called again at Key West on a later day and subsequently to the going into full force and effect of the tariff act, 1909; section 29 of that act governed the entry of the gin August 10, 1909, and it was dutiable as entered of that day.

United States Court of Customs Appeals, November 30, 1910.

APPEAL from a decision of the Board of United States General Appraisers, G. A. 6945 (T. D. 30161).

[Reversed.]

*D. Frank Lloyd,* Assistant Attorney General (*Thomas M. Lane,* special attorney), for the United States.

Submitted by appellee on record.

Before MONTGOMERY, HUNT, SMITH, BARBER, and DE VRIES, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

Mr. Cordero, as owner, imported a quantity of gin from Antwerp, by way of Habana, to Key West, Fla. The vessel containing the gin

---

[1] Reported in T. D. 31114 (19 Treas. Dec., 1245).

arrived at Key West on the 3d of August, but the gin was not unloaded at that date, but was carried through by the vessel to the port of Tampa and returned to Key West on the 6th. On the 4th of August Mr. Cordero presented his entries at the custom-house and was informed that as the gin had not arrived the entry could not be made for immediate consumption. Later, and on the 10th of August, he entered the gin and the assessment was made thereon under the tariff act of 1909.

He protested on the 11th of August against the payment of the increased duty under the tariff act of 1909, amounting to 35 cents per gallon, stating that the reason the gin was not unloaded on the 3d at Key West was that the vessel was carrying United States mail and she could not be detained to make a more minute search for the case of liquors, which had been stored in the bow of the steamer, far removed from the gangway, and adding that if the liquor had been landed on its arrival at port on the 3d the importer would have had ample time to make entry for the same and thereby saved the additional cost of 35 cents per gallon, and on appeal to the Board of General Appraisers the protest was allowed and a refund of 35 cents per gallon directed. The case is brought here by the Government for review.

It is apparent that the case is one of some hardship to the importer, as it is manifest that it was through no fault of his that the gin was not entered for assessment and liquidation on the 3d of August; but the question presented is whether there was authority to enter the goods on the 4th of August, when the entry was attempted in the absence of the goods themselves.

The language of section 29 of the tariff act of 1909 is—

That on and after the day when this act shall go into effect all goods, wares, and merchandise previously imported, for which no entry has been made, and all goods, wares, and merchandise previously entered without payment of duty and under bond for warehousing, transportation, or any other purpose, for which no permit of delivery to the importer or his agent has been issued, shall be subjected to the duties imposed by this act and to no other duty, upon the entry or the withdrawal thereof.

The board in its opinion held, what we think is abundantly sustained by the authorities, that the importation actually takes place whenever the goods reach the port of destination, and that the right of Government to exact duties accrues in the fiscal sense of the term at that time. See United States v. Vowell (5 Cranch, 368); United States v. Arnold (24 Fed. Cas., 872); Meredith v. United States (13 Pet., 494); In James's case, G. A. 4869 (T. D. 22828).

If the importer was entitled to the rate of duty which attached in favor of Government when the vessel reached the port, without regard

to when the entry was made, the conclusion of the Board of General Appraisers was correct. It was said by the board in its opinion:

An importation must always precede an entry, and the collector may have been justified in refusing the entry offered August 4, when he had no official knowledge that the merchandise in question had been imported into the port of Key West; but when it comes to the ultimate determination of the question whether the merchandise should pay duty under the old or the new law, the fact as to the date of the importation and not the collector's official knowledge must be considered.

We are constrained to hold that the board was in error in this holding. The language of section 29 clearly imports that the date when the entry is made is the date at which the goods become dutiable at the rate fixed by the new act. In plain terms, it is provided that goods previously imported for which no entry has been made shall be dutiable under the new act and not under any other act.

We agree with the view expressed by the board that the collector of customs was justified in declining to enter these goods on the 4th of August. Entry implies the presence of the merchandise at the time, for the entry is required to be followed by an inspection and appraisal of the goods. (Rev. Stat., 2899, 2901.) It would seem to follow that the goods were dutiable under the new act, unless there is some way by which we can relieve from the hardship resulting to the importer through no fault of his own. Unfortunately, we find no provision of law which justifies the court in departing from the rule fixed by this section.

It follows that the decision of the Board of General Appraisers must be reversed.