MARQUES DEL MERITO, INC. *v.* UNITED STATES (No. 4592)[1]

[1] C. A D. 394.

United States Court of Customs and Patent Appeals, December 7, 1948

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for appellant.

*David N. Edelstein*, Assistant Attorney General (*Charles J. Miville*, Acting Head, Customs Division, and *Alfred A. Taylor, Jr.* and *Richard F. Weeks*, special attorneys, of counsel), for the United States.

[Oral argument October 7, 1948, by Mr. Schwartz and Mr. Weeks]

Before GARRETT, Chief Judge, and HATFIELD, JACKSON, O'CONNELL, and JOHNSON, Associate Judges

GARRETT, Chief Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, First Division, overruling appellant's protest against the duty assessment by the Collector of Customs at the port of New York City on one hundred butts in which sherry wine was shipped into the United States.

Upon arrival in the United States, the butts with the wine therein were entered for warehouse. Subsequently, while in the bonded warehouse, the wine was drawn from the butts into bottles and entered for consumption, the emptied butts being left in the warehouse. The duty on the wine was paid and that duty is not here involved. For withdrawing the empty butts, which were left in the warehouse, appellant made consumption entries, and, as the butts were withdrawn from time to time, the collector assessed and collected duty on them at 7½ per centum ad valorem.

It is agreed that the butts were "usual containers" of wine, and it is the contention of the importer that as such, the wine being "specific duty merchandise," the butts were not subject to the duty assessment made by the collector.

The only question involved in the case is one of law. The material facts are embodied in a stipulation by counsel for the respective parties made at the opening of the trial before the Customs Court. The stipulation, as quoted in that court's decision, reads:

1. The importation in question consisted of sherry wine from Spain, including one hundred butts of sherry wine, which are the subject of this stipulation.

2. The butts were not of unusual design, and were not designed for use otherwise than in the bona fide transportation of the wine to the United States. The butts were in chief value of wood.

3. The merchandise in question was entered for warehouse.

4. Thereafter, application was made to repack the merchandise, and the wine was repacked into bottles, pursuant to and in accordance with the provisions of Sec. 562, Tariff Act of 1930, and the pertinent customs regulations.

5. As a result of the repacking of the wine, one hundred empty butts remained in bonded warehouse. Thereafter, the plaintiff was required by the collector of customs to make, and did make, warehouse entries for consumption, for the one hundred empty butts, before obtaining delivery of the empty butts.

6. Upon withdrawal of the empty butts, the collector assessed duties on the empty butts at 7½% ad valorem under Par. 407, Tariff Act of 1930, as modified by the Canadian Trade Agreement, as "Casks, barrels, and hogsheads (empty), of wood, not specially provided for * * *." The duties on the empty butts were assessed upon a value reported on the invoice by the appraiser after the wine was repacked.

Section 562 of the Tariff Act of 1930 (19 U. S. C. 1940 ed., § 1562), as amended by the Customs Administrative Act of 1938 (52 Stat. 1077, 1088), is captioned "Manipulation in Warehouse." It reads:

Unless by special authority of the Secretary of the Treasury, no merchandise shall be withdrawn from bonded warehouse in less quantity than an entire bale, cask, box, or other package; or, if in bulk, in the entire quantity imported or in a quantity not less than one ton weight. All merchandise so withdrawn shall be withdrawn in the original package in which imported unless, upon the application of the importer, it appears to the collector that it is necessary to the safety or preservation of the merchandise to repack or transfer the same: *Provided*, That upon permission therefor being granted by the Secretary of the Treasury, and under customs supervision, at the expense of the proprietor, merchandise may be cleaned, sorted, repacked, or otherwise changed in condition, but not manufactured, in bonded warehouses established for that purpose and be withdrawn therefrom for exportation to a foreign country or for shipment to the Virgin Islands, American Samoa, or the island of Guam, without payment of the duties, or for consumption, upon payment of the duties accruing thereon, in its condition and quantity, and at its weight, at the time of withdrawal from warehouse, with such additions to or deductions from the final appraised value as may be necessary by reason of change in condition. The basis for the assessment of duties on such merchandise so withdrawn for consumption shall be the entered value or the adjusted final appraised value, whichever is higher, and if the rate of duty is based upon or regulated in any manner by the value of the merchandise such rate shall be based upon or regulated by such adjusted final appraised value; but for the purpose of the ascertainment and assessment of additional duties under section 489 of this Act adjustments of the final appraised value shall be disregarded. The scouring or carbonizing of wool shall not be considered a process of manufacture within the provisions of this section. Under such regulations as the Secretary of the Treasury shall prescribe, imported merchandise which has been entered and which has remained in continuous customs custody may be manipulated in accordance with the provisions of this section under customs supervision and at the risk and expense of the consignee, but elsewhere than in a bonded warehouse, in cases where neither the protection of the revenue nor the proper conduct of customs business requires that such manipulation be done in a bonded warehouse.

The concluding sentence of the section constitutes the amendment adopted in the Customs Administrative Act of 1938, *supra*. It is obvious that it has no bearing on the instant controversy. It permits manipulation (under the conditions therein prescribed) "elsewhere

than in a bonded warehouse." In the instant case, whatever "manipulation" occurred took place, according to the stipulation, *supra*, in a bonded warehouse. The amendment was not discussed by the trial court, nor is it discussed in the briefs before us. So, it requires no further attention here.

Paragraph 407 of the Tariff Act of 1930, as modified by the Canadian Trade Agreement, T. D. 49752, provides that casks, barrels, and hogsheads (empty) of wood, not especially provided for, but not including beer barrels or beer kegs, shall be assessed with duty at 7½% ad valorem.

It is not questioned by the appellant that the butts here involved, if classifiable for duty, are classifiable under paragraph 407, as modified. The contention of appellant is, as has been stated, that they are not subject to any duty.

As an aid in understanding the issue invloved, it is not improper to state certain assumptions of law made upon the basis of the facts presented and the pertinent statutes:

First. Had the butts been imported empty, they would have been subject to the duty imposed.

Second. Had the butts with their wine content been entered for consumption without being first entered for warehouse, the only duty assessable would have been the specific duty provided for the wine which they contained. In other words, the filled butts would not have been subject to the ad valorem duty provided by par. 407, *supra*.

Third. If, after having been placed in the bonded warehouse under warehouse entry, the butts with the wine in them had been withdrawn under consumption entry, the only assessable duty would have been the specific duty on the wine.

Fourth. After the wine had been withdrawn from the butts, the empty butts might have been withdrawn from the warehouse "without the payment of the duties" (see proviso to section 562, *supra*), "for exportation to a foreign country or for shipment to the Virgin Islands, American Samoa, or the island of Guam."

However, no one of the foregoing acts occurred in the instant case.

The empty butts were not withdrawn on entries for exportation to a foreign country or to the Virgin Islands, American Samoa, or the island of Guam, but on "consumption" entries. Hence, if they had been "cleaned, sorted, repacked, or otherwise changed in condition" while in the bonded warehouse, within the meaning of those terms as used in the proviso of sec. 562, *supra*, they became subject to the phraseology reading, "or [withdrawn] for consumption, upon the payment of the duties accruing thereon, in its condition and quantity, and at its weight, at the time of withdrawal from warehouse, with such additions to or deductions from the final appraised value as may be necessary by reason of change in condition."

As we view it, there is no reason to consider here the statutory words, "cleaned," "sorted," or "repacked" in connection with the butts and, therefore, the specific matter for determination is whether by reason of the wine having been taken out of the butts, the butts were "changed in condition" within the meaning of that phrase as used in the proviso of sec. 562, *supra*, so that at the time of their withdrawal from the warehouse they were subject to the duties assessed as duties "accruing" by reason of change in condition.

It is not contended that any changes were made in the physical structure of the butts, nor were they cleaned, sorted, or repacked. They were merely emptied.

It is argued before us on behalf of appellant, as apparently it was argued below, that the merchandise in the case consisted of the wine only, and that the butts came into the United States as containers—not as merchandise.

The brief for appellant concedes in effect that the butts after being emptied and withdrawn from warehouse entered into competition with butts manufactured in the United States, but says:

\* \* \* that is just as true in the case of barrels of wine entered for consumption, and repacked into bottles after importation. No one would suggest that the empty barrels become dutiable as imported merchandise.

As to this, it may be said that a "butt" is concededly a form of cask or barrel, and whatever classification is applicable to butts is applicable to barrels. That is, empty barrels. The brief further states (italics quoted):

\* \* \* Note that Section 562 provides that the *merchandise* which has been repacked shall be subject to duty at "the entered value or the adjusted final appraised value, whichever is higher." This clearly implies that the merchandise on which Section 562 operates, has some entered value, or *adjusted* appraised value, that is to say, it has some appraised value to begin with, which is adjusted upward or downward by reason of the manipulation or repacking. But the casks in question had neither any entered value, nor any appraised value to begin with, and necessarily had no *adjusted* appraised value. (The agreed statement of facts shows that the duties were assessed upon a value reported on the invoice by the appraiser after the wine was repacked.) Thus the statute shows on its face that it is inapplicable to the butts under consideration here.

We have noted that in the foregoing the brief refers only to "manipulation or repacking," and makes no reference to the phrase "or otherwise changed in condition" which, as we have indicated, is (in our opinion, as evidently it was in the opinion of the trial court) the pertinent phrase in this case.

It may be added that the phrase is not elsewhere discussed in the brief for appellant.

In passing upon the issue, it is vitally essential that the time of importation—that is, the time when the imported goods became subject to customs duties—be determined. This the trial court did.

It cited the decision of this court in the case of *Henry Hollander Co.* v. *United States*, 22 C. C. P. A. (Customs) 645, T. D. 47632, and quoted the following therefrom:

Generally, however, and unless the contrary clearly appears, the word "importation" means "the bringing of goods within the jurisdictional limits of the United States with the intention to unlade them." *United States* v. *Field & Co.*, 14 Ct. Cust. Appls. 406, T. D. 42052, and cases cited; *Cunard S. S. Co.* v. *Mellon*, 262 U. S. 100.

Commenting, the trial court (majority opinion) said, *inter alia:*

* * * The question is, does the "contrary clearly appear," that is to say, has Congress manifested an intention to change the determination of the tariff status, i.e., the classification, of merchandise manipulated under the provisions of section 562, from the time when it entered the jurisdictional limits of the United States with the intention to unlade it to some other time? We are satisfied that it has.

The court then stated its reasons for holding that the goods became subject to duty in their condition at the time of withdrawal from warehouse, citing the case of *United States* v. *F. B. Vandergrift & Co.*, 17 C. C. P. A. (Customs) 127, T. D. 43455.

In the course of its decision, the court also cited the case of *Minneapolis Cold Storage Co.* v. *United States*, 9 Ct. Cust. Appls. 225, T. D. 38200, saying that the situation in the instant case "is very like that which obtained" in that case. Its statement is:

There, quarters of beef were imported accompanied but not covered by, certain sacks, which were the usual coverings for such class of merchandise. The beef was allowed free entry, but the sacks were assessed with duty, although there is no question but if they had actually covered the beef they would have been entitled to free entry as the usual coverings of duty-free merchandise.

In a concurring opinion, Cole, Judge, stated:

I concur in the conclusion and judgment in this case, but in doing so I am influenced largely by the reasoning employed in two cases which are not included in the majority opinion.

In the well-known "Five Per Cent Cases," 6 Ct. Cust. Appls. 291, T. D. 35508, the court said: "The purpose of tariff laws, generally speaking, is to provide that the dutiable status of imported merchandise is to be determined at the time it enters into the commerce of the country." "So long as merchandise remains under bond for ware-housing in the tariff sense and for assessment of duties, its importation has not been completed. Indeed, it may never be completed; hence, warehoused goods are for tariff purposes future importations."

*Stone & Downer et al.* v. *United States*, 19 Ct. Cust. Appls. 259, T. D. 45388, emphasized the same rule in the following language: "No principle is better settled in this court than the one that goods in bonded warehouses are not to be considered as imported until a permit of delivery has been issued and they enter into the commerce of the country."

The facts in this case justify application of the principle laid down in the two aforementioned cases, and taken into consideration with the cases cited by Judge Mollison, fully support the conclusion reached.

44

We think it clear that the dutiable status of the butts here involved must be determined by their condition at the time of their withdrawal from warehouse upon entry for consumption.   They then were empty.

The judgment appealed from is *affirmed*.