(C. D. 1377)

HENRY CLAY AND BOCK & CO., LTD. v. UNITED STATES

United States Customs Court, Third Division

(Decided December 5, 1951)

*Fred Bennett* (*John R. Rafter* of counsel) for the plaintiff.
*Charles J. Wagner*, Acting Assistant Attorney General (*Richard E. FitzGibbon*, special attorney), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges; CLINE, J., not participating

· EKWALL, Judge: This is an action brought under the provisions of section 514 of the Tariff Act of 1930 (19 U. S. C. sec. 1514) by a manufacturer of cigars made from leaf tobacco imported from Cuba. The cigars were manufactured in a bonded (class 6) warehouse. In the process of manufacture, certain wastes occurred, viz, stems, sweepings, and dust, which were destroyed under customs supervision. The importer, the plaintiff herein, was required to pay duty upon the entire quantity of tobacco imported. Plaintiff claims that allowance should have been made for the wastes destroyed. Such claim is made under section 311, 557, or 558 of the said tariff act, as amended (19 U. S. C. sec. 1311, 1557, or 1558). A further claim is made that the denial of such refund of duties was contrary to and in violation of the last provision of section 315 of said act (19 U. S. C. sec. 1315), as amended, in that it purportedly gave effect to a change of practice such as is described in said section, without the notice therein prescribed.

The case has been submitted upon a stipulation of fact, supplemented by exhibits and the official papers. The defendant reserved the right to dispute the relevancy and materiality of any or all facts recited in paragraphs 14 to 19, inclusive, of said stipulation. Both parties reserved the right to refer in their briefs and arguments to any facts of which the court may take judicial notice, which are relevant and material to the legislative history of any pertinent provision of said tariff act, as amended, if such legislative history may properly be considered by the court in interpreting the meaning of said provision.

The issue is one of law and resolves itself into a determination of the question: Do the provisions of the statute contemplate any allowance for waste in the tobacco which is used in the manufacture of cigars in a bonded (class 6) warehouse?

The stipulation, which covers 28 paragraphs, may be summarized as follows:

That the plaintiff herein is engaged in the manufacture of cigars in the United States and has been so engaged since 1932; that since 1933, it has operated a class 6 bonded manufacturing warehouse for the manufacture, for home consumption, of cigars made entirely of Cuban tobacco; and for that purpose imported from Cuba unstemmed leaf tobacco, both wrapper and filler, and stemmed filler tobacco. That prior to the transfer of the tobacco in suit to said bonded manufacturing warehouse, duties were paid thereon on its imported weight. That in processing said tobacco into cigars, in said bonded manufacturing warehouse, certain wastes were incurred, namely, cuttings, pieces, and particles of various sizes, which were put through a power-driven cutting machine, screened, according to size, into three categories, viz, scrap, picadura, and dust; that the scrap and picadura consisted of relatively large and small scraps, respectively, of tobacco, and were tobacco wastes or byproducts which had a tobacco use; and that the dust was a tobacco waste which was not used in the manufacture of cigars or any other tobacco product. That in said processing, another tobacco waste was incurred, viz, sweepings, which consisted of all kinds of tobacco wastes that were either swept from the floors or removed from the machines when the machines were being cleaned; and that said waste was not used in the manufacture of cigars or other tobacco product. That these wastes were destroyed under customs supervision and in compliance with customs regulations.

That in 1935, under a ruling of the Treasury Department, regulations were promulgated directing collectors of customs to make allowance in the liquidation of entries of tobacco manufactured into cigars in a bonded (class 6) warehouse, for the exportation or destruction under customs supervision of stems and other tobacco wastes derived from tobacco imported from any one country.

That pursuant to said ruling, such allowances were in fact made between 1935 and 1948, at which time the practice was discontinued, pursuant to instructions of the Secretary of the Treasury, without any previous notice to importers or owners of the tobacco.

That during the years between 1935 and 1948, this plaintiff had received such refunds under said ruling.

That by letter to the plaintiff under date of February 6, 1948, the collector of customs at the port of Philadelphia denied plaintiff's request for a refund in this case, which request was denied pursuant to instructions of the Secretary of the Treasury dated January 28, 1948. (Copies of the request and the denial embodying the instructions of the Secretary were admitted in evidence as exhibits 3 and 4.)

That if such refunds are allowable, the rates and amounts of duties applicable thereto are correctly stated on the first page of "Abstract of Manufacturing Records and Entry for Refund of Duty" herein.

That all regulations as to the identity of the wastes destroyed were complied with by the plaintiff as to the entries involved in this litigation.

For convenience of reference, we set forth the pertinent portions of sections 311, 557, 558, and 315, *supra*.

SEC. 311. (As amended.) BONDED MANUFACTURING WAREHOUSES.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

Articles manufactured under these provisions may be withdrawn under such regulations as the Secretary of the Treasury may prescribe for transportation and delivery into any bonded warehouse at an exterior port for the sole purpose of immediate export therefrom: *Provided*, That cigars manufactured in whole of tobacco imported from any one country, made and manufactured in such bonded manufacturing warehouses, may be withdrawn for home consumption upon the payment of the duties on such tobacco in its condition as imported under such regulations as the Secretary of the Treasury may prescribe, and the payment of the internal-revenue tax accruing on such cigars in their condition as withdrawn, and the boxes or packages containing such cigars shall be stamped to indicate their character, origin of tobacco from which made, and place of manufacture.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

SEC. 557. (As amended by the Customs Administrative Act of 1938.) ENTRY FOR WAREHOUSE—WAREHOUSE PERIOD—DRAWBACK.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

(c) Merchandise entered under bond, under any provision of law, may, upon payment of all charges other than duty on the merchandise, be destroyed, at the request and at the expense of the consignee, within the bonded period under customs supervision, in lieu of exportation, and upon such destruction the entry of such merchandise shall be liquidated without payment of duty and any duties collected shall be refunded.

SEC. 558. (As amended by the Customs Administrative Act of 1938.) NO REMISSION OR REFUND AFTER RELEASE OF MERCHANDISE.

(a) No remission, abatement, refund, or drawback of estimated or liquidated duty shall be allowed because of the exportation or destruction of any merchandise after its release from the custody of the Government, except in the following cases:

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

(3) When articles entered under bond, under any provision of law, are destroyed within the bonded period as provided for in section 557 of this Act, or are destroyed within the bonded period by death, accidental fire, or other casualty, and proof of such destruction is furnished which shall be satisfactory to the Secretary of the Treasury, in which case any accrued duties shall be remitted or refunded and any condition in the bond that the articles shall be exported shall be deemed to have been satisfied.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

SEC. 315. ·EFFECTIVE DATE OF RATES OF DUTY.

On and after the day when this Act shall go into effect all goods, wares, and merchandise previously imported, for which no entry has been made, and all goods, wares, and merchandise previously entered without payment of duty and under bond for warehousing, transportation, or any other purpose, for which no permit of delivery to the importer or his agent has been issued, shall be subjected to the duties imposed by this Act and to no other duty upon the entry or the withdrawal thereof. Insofar as duties are based upon the quantity of any merchandise, such duties shall, except as provided in paragraph 813 and section 562 of this Act (relating respectively to certain beverages and to manipulating warehouses), be levied and collected upon the quantity of such merchandise at the time of its importation. No administrative ruling resulting in the imposition of a higher rate of duty or charge than the Secretary of the Treasury shall find to have been applicable to imported merchandise under an established and uniform practice shall be effective with respect to articles entered for consumption or withdrawn from warehouse for consumption prior to the expiration of thirty days after the date of publication in the weekly Treasury Decisions of notice of such ruling; but this provision shall not apply with respect to the imposition of antidumping duties. [As amended June 25, 1938, 5 p. m. E. S. T. ch. 679 § 6, 52 Stat. 1081.]

Plaintiff's contentions are stated in the brief filed as follows:

I. By denying a refund of duties on the tobacco wastes in question which were destroyed under customs supervision, the collector of customs has, in effect and contrary to the provisions of Section 311 of the Tariff Act of 1930, as amended, assessed duties on more imported tobacco in a bonded manufacturing warehouse than was withdrawn therefrom for consumption in the form of cigars, by-products, or otherwise. Hence, the duties which were paid in advance on the weight of as much of that tobacco as was later destroyed under customs supervision in the form of the wastes in question should be refunded, under Section 311, to the extent that they are shown.

II. A refund of the duties, which were paid in advance on the weight of the imported tobacco which was later destroyed under customs supervision in the form of the wastes in question, is also allowable by virtue of Sections 557 and 558 of the Tariff Act of 1930, as amended, to the extent that they are shown.

III. Regardless of the correct interpretation of Sections 311, 557 and 558 of the Tariff Act of 1930, as amended, the denial of a refund of the duties which were paid in advance on the weight of the imported tobacco which was later destroyed under customs supervision in the form of the wastes in question was erroneous, illegal and void, because it purportedly gave effect to a change of practice such as is described in the last provision of Section 315 of the Tariff Act of 1930, as amended, without the notice therein prescribed.

The Government claims that a construction of the "cigar proviso" of section 311, *supra*, does not contemplate an allowance for any waste resulting from the manufacture of cigars from imported tobacco; that the words "such tobacco" in said section have as their antecedent the term "tobacco imported from any one country" and therefore refer to all of the tobacco imported in its quantity and condition as imported. In support of this contention, Government counsel filed a photostatic copy of a letter from the then Secretary of the Treasury to the Chairman of the Ways and Means Committee of the House, while the bill

which became the Tariff Act of 1913 was being considered. Said letter is in the following language:

My dear Mr. Underwood:

I am in receipt of your letter of the 20th instant, transmitting a communication from Hon. Duncan U. Fletcher and Hon. S. M. Sparkman, relative to the amendment on pages 280 and 281 of the tariff bill now in conference regarding the withdrawal for consumption of cigars manufactured in bonded manufacturing warehouses.

I concur in the opinion of the gentlemen referred to that under the amendment as framed, cigars manufactured in such warehouses would, if withdrawn for consumption, be assessed with duty as cigars at the rate of $4.50 per pound and 25 per centum ad valorem under paragraph 187 of the bill, and if it is the intention that only the tobacco in the cigars shall be assessed with duty upon withdrawal of the cigars for consumption, I am further of the opinion that the amendment suggested in the communication above referred to would fulfill the purpose.

I deem it propoer [sic] to point out in this connection, however, that if the amendment suggested is adopted, it would be open to the construction that duties would be collected only upon the weight of the tobacco in the cigars as withdrawn whereas it is probably the intention to assess duty upon the imported tobacco used in the manufacture of the cigars including the wastage as would be done in case the cigars were manufactured otherwise than in such bonded warehouses.

If it is desired that duty shall be assessed upon all of the tobacco used in the manufacture of the cigars, I suggest that the proviso beginning on line 24 of page 280 and ending in line 8 of page 281 read as follows:

Provided, That cigars manufactured in whole of tobacco imported from one country made and manufactured in such bonded manufacturing warehouses, may be withdrawn for home consumption upon the payment of the duties chargeable against the tobacco in its condition as imported, which was used in the manufacture of the cigars, under such regulations as the Secretary of the Treasury may prescribe, and the payment of the internal revenue tax accruing on such cigars, and the boxes or packages containing such cigars shall be stamped to indicate their character, origin of tobacco from which made and place of manufacture.

I have eliminated the phrase beginning on line 5, page 281 "in condition as withdrawn" as being unnecessary.

Very truly yours,

(Signed) William G. McAdoo,
Secretary.

At the end of this letter there is endorsed in handwriting:

This is satisfactory. Substitute this for the amendment as it appears in the bill.
Fletcher.

The amendment, which was numbered 659, was agreed to by the House of Representatives with slight changes, inserting after the word "duties" the words "on such tobacco in its condition as imported," and changing the word "thereon" appearing two lines further on to "on such cigars." (Conference Report No. 86, 50 Cong. Rec. 5227

and 5311.)    On page 5229 of the same volume, the House managers state:

> Paragraph M:  The conference adopted the Senate Amendment 659 permitting the manufacture of cigars in a bonded warehouse and the withdrawal therefrom for consumption in the United States, upon the payment of the duty on the tobacco used in its imported condition and the internal-revenue tax on the cigars.

It would seem from the history of the legislation above set forth that it was the intention of the Congress to levy duty upon the amount of tobacco imported, rather than on the amount contained in the product into which such tobacco was manufactured, i. e., cigars.   That the provision is the grant of a privilege is plainly demonstrated when we compare the rate applicable to cigars which is found in paragraph 605 of the Tariff Act of 1930, i. e., $4.50 per pound and 25 per centum ad valorem, and the rate assessed upon this importation.   It may very well be that Congress considered that in providing for the admission of cigars manufactured in manipulating warehouses at the rate applicable to the tobacco content of the importation, the importer had been treated very generously and therefore decided not to grant a further allowance for the weight of the scrap tobacco obtained as a byproduct of such manipulation, even if abandoned and destroyed. However that may be, the court is of the opinion that the history of the legislation discloses an intent on the part of the legislative body to assess duty upon the entire amount of tobacco imported, in its condition as imported.   This is in line with the general rule that classification of imported merchandise is determined as of its condition at the time of importation.   *Worthington* v. *Robbins*, 139 U. S. 337, and *United States* v. *Schoverling*, 146 U. S. 76.

We have been unable to find any cases directly in point, in spite of diligent research.   However, we are satisfied that the reasons underlying the insertion of the amendment to paragraph M, *supra*, as found in the Tariff Act of 1913, which was superseded by section 311 of the Tariff Act of 1922, which, in turn, was superseded by section 311 of the 1930 act now under consideration, were sufficient to convince the legislative body that the importer of tobacco such as that in suit should pay duty upon all of that tobacco in the condition in which imported.   This is in line with the leading cases involving loss or leakage in a bonded warehouse.   In *Minneapolis Cold Storage Co.* v. *United States*, 9 Ct. Cust. Appls. 225, T. D. 38200, the court cited the cases of *Worthington* v. *Robbins*, 139 U. S. 337, and *United States* v. *Schoverling*, 146 U. S. 76, and said:

> It is also well settled that the classification of imported merchandise,    *  *  *  must be determined in view of the condition in which it is imported.

As to plaintiff's claim that refund in duties should be allowed under sections 557 and 558, *supra*, it must be borne in mind that section 557,

which provides, among other things, for the destruction of merchandise in bond and refund of duties paid, is a general provision covering merchandise in warehouse and must be considered in connection with section 311, *supra*. If possible, the two sections should be harmonized in order to avoid conflict. *United States* v. *Siegfried Lowenthal Co.*, 31 C. C. P. A. (Customs) 19, C. A. D. 244. In that case, the court said:

It is an elementary rule of statutory construction, which requires no citation of authority, that all parts of a statute should be given effect if possible, and that general language in one part of a statute will not be held to modify specific provisions of another part unless such modification is expressly stated or clearly implied. There is no express modification of paragraph 813 or section 563 by section 562. Neither, in our opinion, is there any modification thereof by implication. There is nothing in the legislative history of section 562, *supra*, which would warrant a different conclusion. Furthermore, paragraph 813 is a provision directed specifically to intoxicating liquor and it would be repugnant to rules of statutory construction to hold that general provisions such as appear in section 562 overrule, modify, or repeal the specific provisions of the paragraph.

It is contended on behalf of the Government that if the tobacco entered under bond is destroyed under customs supervision, section 557 becomes operative, and the entry is liquidated free and any duty refunded; that the tobacco is the merchandise entered under bond. Therefore, the waste was not the merchandise entered under bond. That merchandise was tobacco which was made into cigars and the cigars withdrawn for consumption, thus bringing into operation the provisions of section 311 and removing the merchandise from the purview of section 557.

The case of *American Smelting & Refining Co.* v. *United States*, 13 Ct. Cust. Appls. 507, T. D. 41391, while not directly in point, lends support to the Government's position. There, crude ore containing both lead and zinc was imported and entered under bond for refining. In the refining process, the lead was recovered but the zinc was destroyed. The collector assessed duty upon both the lead and zinc content of the ore, and it was claimed on behalf of the importer that the duty paid on the zinc should be refunded. The court, in overruling this claim, said:

Finally, it is argued that the zinc in question here was duly destroyed, under the last paragraph of section 537 [*sic*] [557], of said Tariff Act of 1922. That paragraph is as follows:

Merchandise entered under bond, under any provision of law, may be destroyed, at the request and at the expense of the consignee, within the bonded period under customs supervision, in lieu of exportation, and the consignee relieved of the payment of duties thereon.

We are not prepared to hold that this language can be applied to the zinc in question. If appellant had procured the destruction, under this section, of the lead or other refined metal produced by him as the result of his smelting and refining operations, it might, with some reason, be claimed that all duties represented by his bond should be canceled. But here he does not do this. Retaining

the recoverable product of his operations, he seeks the destruction of the irrecoverable residue and the cancellation, thereby, of a part of his bonded obligation. We believe that to so hold would be to accomplish by indirection what we have said, herein, we can not do by direction.

Applying that reasoning to the case at bar, the importer retains the cigars and seeks the destruction of the waste, which is the result of the manufacturing process, thereby demanding cancellation of a part of its bonded obligation to pay duty on all of the tobacco imported. The provisions of section 557, *supra*, taken in connection with the "cigar proviso" of section 311, *supra*, do not contemplate such a situation.

Section 558, *supra*, provides for refund in duty on "articles entered under bond * * * [which] are destroyed." The article entered under bond in this case was leaf tobacco. The article destroyed is waste.

We therefore find that the two sections of the 1930 act are not in conflict but that both can be administered within the tariff structure.

As above stated, the "cigar proviso" was added to the bonded manufacturing warehouse provisions by the Tariff Act of 1913. That act and the present tariff provisions contemplated that articles manufactured in bonded manufacturing warehouses of imported materials or of materials subject to internal revenue tax, with the exception of cigars, were imported and manufactured for export, not for consumption. Therefore, the question of duty does not arise, except in such cases as byproducts or wastes arising from the manufacturing process are withdrawn for consumption, in which case duty is assessed. The "cigar proviso," however, is a departure from the general customs treatment of imported merchandise in bonded manufacturing warehouses, in that it permits the withdrawal of such cigars for home consumption upon the payment of duty on the tobacco in its condition as imported. Being a specific provision it is removed from the general provision which contemplates the exportation of the article into which the imported material has been converted.

It is clear, therefore, that both the proviso for the destruction of waste occurring in the manufacture of merchandise in a bonded warehouse, which merchandise is exported, and the "cigar proviso" under which no allowance for waste is made when the cigars are withdrawn for consumption, are harmonized and can be equally administered with due regard to both.

In the proviso permitting the destruction of waste, allowance for duty or refund of duties paid is not mentioned for the reason that no question of duty arises. In the "cigar proviso," what afterwards became waste was an inseparable part of the tobacco as imported and upon the withdrawal of the cigars for consumption, duty is measured by the tobacco imported in its condition as imported. To make

allowance for waste under this proviso would defeat the purpose of the statute and result in measuring the duty not on the tobacco in its condition as imported but in its condition resulting from manipulation.

Another reason which persuades us that plaintiff's position cannot legally be maintained is that under plaintiff's theory an importer who imported tobacco for immediate consumption would be in a less favorable position than one who imported and entered the same grade of tobacco in bond for manipulation into cigars. The former would be charged with duty on the entire amount of tobacco entered, whereas the latter would pay only on the portion used in the cigars. We do not believe that Congress intended such a result.

Counsel for the plaintiff in his interesting and scholarly brief propounds a number of queries as to what action collectors of customs are now taking in connection with tobacco byproducts which may be withdrawn from warehouse for domestic consumption and expresses the hope that defendant will reply to these queries in order that the court may be informed on the subject. The record is silent on that point. Therefore, the matter is not before the court.

Plaintiff's counsel also suggests that if tobacco which is withdrawn from the type of warehouse here involved, for domestic consumption, in the form of byproducts, on which duty must be paid as a condition for its withdrawal, is also subject to payment of duty as a condition for the withdrawal of the cigars from such warehouses for home consumption, it would be tantamount to asserting that the same tobacco is dutiable twice, once as an integral part of leaf tobacco which is imported for the manufacture of cigars, and again in the form of byproducts incident to the manufacture of the cigars. From this, plaintiff contends that section 311, *supra*, does not provide for any such double taxation. However that may be, the court can decide only the issue presented. In this case, the question before us is whether the provisions of the statute contemplate any allowance for waste resulting from the manufacture of cigars in a bonded (class 6) warehouse from imported tobacco, when such waste has been destroyed under customs supervision.

As to plaintiff's remaining contention, viz, that the instruction to the collector of customs at the port of Philadelphia to refuse allowance in the liquidation of the entries here was issued in violation of section 315 of the Tariff Act of 1930, as amended, we find no merit in this claim, inasmuch as we have found that the law does not authorize such allowance. The instructions issued in 1935 authorizing the allowance had no sanction in law and were in fact a nullity. Therefore, the instructions of 1948, which discontinued such illegal allowance, and restored the situation to its correct legal status, cannot be termed a legal ruling resulting in a higher rate of duty on imported

tobacco. *White Lamb Finlay, Inc.* v. *United States*, 29 C. C. P. A.
(Customs) 199, C. A. D. 192. There, the court held that the Treasury
decision there involved, being a nullity from the date of its promul-
gation, could not be the basis of a proper administrative practice
under it. The Treasury Department ruling involved in the cited
case was made in 1916 and was followed thereafter until 1938 when
the Commissioner of Customs directed a change in such practice.
We quote from the court's opinion as follows:

> Appellant argues that the interpretation made by the Treasury Department in
> 1916 continued in effect for more than 20 years, during which time Congress
> enacted the Emergency Tariff Act, 1921, and the Tariff Acts of 1922 and 1930,
> with no change in the language "freely offered for sale to all purchasers" as inter-
> preted in said T. D. 36448; that by the enactment of said tariff acts subsequent
> to the tariff act of 1913, Congress adopted the interpretation set forth in said
> Treasury decision, and that therefore the words "freely offered for sale to all
> purchasers," as found in section 402 (d) of the Tariff Act of 1930, should be inter-
> preted in accordance with said Treasury decision. ·
>
>      \*         \*         \*         .\*         \*         \*         \*
>
> For the purposes of this case we may assume that if said T. D. 36448 was a
> valid regulation in effect at the time of the importation of the involved mer-
> chandise, and assuming that the price of 4.15 Belgian francs per meter, less 3
> per centum, was the freely offered price for such or similar merchandise on June
> 21, 1939, for future delivery, the contention of appellant should have been sus-
> tained by the Customs Court.
>
> However, we are of the opinion that said T. D. 36448 never had any validity
> and was a nullity from the date of its promulgation. Our reasons for so holding
> are hereinafter stated.
>
> If T. D. 36448 was a nullity there could have been no proper administrative
> practice under it, and Congress could not, by use of the same language—"freely
> offered for sale," etc.—in subsequent tariff enactments, be presumed to ratify the
> interpretation given by said T. D. 36448 to the phrase "freely offered for sale to
> all purchasers."
>
>      \*         \*         \*         \*         \*         \*         \*
>
> That long-continued administrative practice by the customs officials may
> not be properly invoked by a party if such practice is clearly contrary to law, is
> well established. *Pacific Creosoting Co.* v. *United States*, 1 Ct. Cust. Appls.
> 312, T. D. 31407; *Lloyd Co.* v. *United States*, 9 Ct. Cust. Appls. 280, T. D. 38217;
> *United States* v. *Field & Co.*, 14 Ct. Cust. Appls. 376, T. D. 42031; *United States*
> v. *Jules Raunheim (Inc.) et al.*, 17 C. C. P. A. (Customs) 425, T. D. 43867.

Since we have found that the ruling in 1935 permitting the allow-
ance for waste was contrary to law, it could have no force and effect,
and whether or not it was followed until 1948 does not establish such
administrative practice or uniform practice, as contemplated by
section 315, *supra.*

For the foregoing reasons we overrule plaintiff's claims and sustain
the action of the collector of customs in refusing to grant an allowance
for tobacco waste, a byproduct resulting from the manufacture of
cigars in a bonded manipulating warehouse under the provisions of

section 311 of the Tariff Act of 1930, which waste was destroyed under customs supervision.

Judgment will be rendered for the defendant.